No. 88-573

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

DANIEL SCYPHERS,

Claimant and Respondent,

-vs-

H & H LUMBER,

Employer,

and

STATE COMPENSATION INSURANCE FUND,

Defendant and Appellant.

APPEAL FROM: The Workers' Compensation Court, The Honorable Timothy
Reardon, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Jeff Hedger; Crowley Law Firm, Billings, Montana

For Respondent:

Thomas J. Lynaugh, Billings, Montana

Submitted on Briefs: April 20, 1989

Decided: June 1, 1989

Filed:

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The State Compensation Insurance Fund appeals a decision by the Workers' Compensation Court. Mr. Daniel Scyphers was injured in an industrial accident on November 21, 1986 and was awarded temporary total disability benefits. In April of 1987, Mr. Scyphers petitioned the Workers' Compensation Court for recalculation of his temporary total disability rate. This matter was submitted on briefs to the examiner, who granted a recalculation of Mr. Scyphers' rate. The Workers' Compensation Court affirmed this decision, and the State Compensation Insurance Fund appeals. We affirm.

The issue presented for our review is whether the three cents per mile paid to a long haul truck driver as per diem is "wages" for purposes of fixing workers' compensation benefits.

The claimant in this case, Mr. Scyphers, worked for H & H Lumber Co. as a long haul truck driver. His hauls often put him on the road for two or three weeks at a time.

On November 10, 1985, H & H Lumber began compensating its long haul drivers at the rate of fourteen cents per mile, plus three-cents-per-mile "per diem." Prior to this time, the drivers did not receive a per diem amount. Rather, each driver was required to keep records of expenses on the road, such as meals and lodging, which were later reimbursed by the company. Mr. Harding, president and general manger of H & H Lumber, testified by deposition that it is no longer necessary for drivers to keep these records. Under the new arrangement, the drivers are not reimbursed for meals or lodging, but are simply paid the per diem amount. The company pay schedule which effectuated this change listed both the fourteen cent and the three cent amounts under the heading, "wages."

H & H Lumber pays its long haul drivers with two checks. One check, reflecting the fourteen-cents-per-mile compensation, has taxes and social security withheld. The second check, representing the three-cents-per-mile per diem amount, has no deductions withheld. Mr. Harding testified that the three cent figure was chosen by him because the IRS has approved of this amount as a per mile per diem expense reimbursement. It is also significant that H & H Lumber pays its short haul drivers, who work locally, seventeen cents per mile, plus a flat daily rate of $15. Mr. Harding explained that the short haul drivers do not register as many miles in a day because they stop to make deliveries; therefore, they are given the additional compensation of the flat daily rate.

In reviewing a decision of the Workers' Compensation Court, the standard of review is to determine whether substantial credible evidence exists to support the findings and conclusions of the Workers' Compensation Court. Stangler v. Anderson Meyers Drilling Co. (Mont. 1987), 746 P.2d 99, 101, 44 St.Rep. 1944, 1947. Findings of fact are not clearly erroneous if they are supported by substantial credible evidence. Tenderholt v. Travel Lodge Intern. (Mont. 1985), 709 P.2d 1011, 1013, 42 St.Rep. 1792, 1794.

Where the testimony in the lower court was presented solely by deposition, this Court is free to examine the findings of the court more closely, as this Court is in the same position as the Workers' Compensation Court in assessing the evidence. Stangler, 746 P.2d at 101-02. In the present case all testimony was presented by deposition, thus the broader standard of review applies.

The definition of "wages" under the Workers' Compensation Act is set out in § 39-71-116(20), MCA (1985), and provides:

3

"Wages" means the average gross earnings received by the employee at the time of the injury for the usual hours of employment in a week, and overtime is not to be considered. Sick leave benefits accrued by employees of public corporations, as defined by subsection (16) of this section, are considered wages.

Montana has not previously considered whether "wages," as this term is applied to Workers' Compensation benefits, includes a "per diem" type of compensation. The Workers' Compensation Court determined that the statute defining wages simply contemplates that any gross earnings are wages, and does not allow for any artificial distinctions. The court found that the employer, by paying the short haul driver in one method, and the long haul driver in another method, had created two distinct wage classifications which "bear little relationship to the definition of wages in the Act." The Workers' Compensation Court suggested that tax considerations may have motivated this arrangement, but that the Act does not provide for this type of differentiation. The Workers' Compensation Court then determined that the per diem amount paid to Mr. Scyphers should be included in his wages.

We agree with the analysis of the Workers' Compensation Court. Under the statute, "wages" simply means gross earnings. We agree with the conclusion of the Arizona Supreme Court in Hobbs v. Industrial Commission (Ariz. App. 1975), 533 P.2d 1159, 1160-61, that how the parties may have treated a per diem amount for tax purposes is not determinative regarding Workers' Compensation benefits. In determining what constitutes gross earnings, other courts have applied the "real economic gain" rule. Ridgway v. Board of Ford County Com'rs (Kan. App. 1987), 748 P.2d 891; Gonzales v. Mountain States Mut. Cas. Co. (N.M. App. 1986), 728 P.2d 1369. Blake Stevens Const. v. Henion (Utah 1985), 697 P.2d

4

230; Moorehead v. Industrial Commission (Ariz.App. 1972), 495 P.2d 866. Under this analysis, the critical distinction is whether a payment was actually a reimbursement for employment-related expenses or whether it constituted real economic gain to the employee. We approve of this analysis, as stated by Professor Larson in his treatise on workers' compensation:

> In computing actual earnings as the beginning point of wage-basis calculations, there should be included not only wages and salary but any thing of value received as consideration for the work, as, for example, tips, bonuses, commissions, and room and board, constituting real economic gain to the employee. (Emphasis added.)

2 A. Larson, The Law of Workers' Compensation § 60.12 (1987).

In the present case, the testimony demonstrates that the three-cents-per-mile per diem was not actually reimbursement for Mr. Scyphers' out-of-pocket employment-related expenses, but rather constituted real economic gain to Mr. Scyphers. Mr. Scyphers testified that when he was traveling on a long haul he slept in the sleeper compartment of his truck. While he ate meals on the road, this expense certainly continued after he was laid off; that is, his meal expense was not tied exclusively to his job. The per diem amount was not reimbursement for expenses such as truck repairs. These types of expenses were either charged to the company credit card, or reimbursed to Mr. Scyphers when he presented a receipt for the repair.

Mr. Scyphers testified that he simply used the proceeds from both checks for living expenses. He was not required to prove any actual employment-related expenses in order to receive the per diem amounts, and Mr. Harding stated that the employees could use the money to buy groceries, or anything else. The evidence supports Mr. Scyphers' assertion that the

three-cents-per-mile per diem was gross earnings in this case and should properly be included in his wages. We have concluded that the three cents per mile constituted real economic gain to Mr. Scyphers. We affirm the decision of the Workers' Compensation Court.

Affirmed.

_____
Justice

We Concur: _____
_____
Chief Justice

_____

_____

_____
Justices

6