No. 90-034

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

TERRY RYLES,

       Claimant and Appellant,

-vs-

SPRINGHILL RANCH EGGS and STATE
COMPENSATION INSURANCE FUND,

       Employer and Defendant,
        Respondent and Cross-Appellant.

FILED

FEB 19 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   Workers' Compensation Court
              The Honorable Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

           Mark L. Guenther; Nash, Guenther, Zimmer & Screnar,
           Bozeman, Montana

       For Respondent:

           Thomas E. Martello; Hughes, Kellner, Sullivan &
           Alke, Helena, Montana

               Argued:   September 6, 1990

             Submitted:   December 6, 1990

              Decided:   February 19, 1991

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the Workers' Compensation Court of the State of Montana. We affirm in part and reverse in part.

The issues presented by claimant are:

1. Whether the Workers' Compensation Court erred in finding claimant 30% permanently partially disabled pursuant to § 39-71-706, MCA (1983).

2. Whether the Workers' Compensation Court erred in allowing defendant credit for permanent partial benefits paid claimant from May 23, 1984, through March 5, 1985.

3. Whether the Workers' Compensation Court erred by denying claimant attorney's fees and costs.

The sole issue presented by defendant is whether the Workers' Compensation Court erred in estopping the State Fund from taking credit for disability benefits paid from March 6, 1985, through December 24, 1987.

We affirm the Workers' Compensation Court on Issue 1 and on the estoppel issue, and reverse on Issues 2 and 3.

Defendant, State Compensation Insurance Fund (State Fund), was claimant's insurer. Claimant, Terry Ryles, lived with his wife, Kathy, and their three children in Belgrade, Montana. At the time of trial, Terry was 41 years old.

In 1982, Terry and Kathy purchased Springhill Ranch Eggs (Springhill). Springhill is a wholesale broker of eggs, selling to stores, restaurants and institutions. The couple first operated

the business as a partnership, but on July 1, 1984, the business was changed to a corporation, closely held. The change to a corporation made no real difference in the operation and management of the business. Terry performed most of the labor, driving, delivery and marketing duties, which required of him a fifty to sixty hour work week. Kathy did the business's bookkeeping.

On May 23, 1984, Terry suffered a back injury as a result of the repeated use of his back and the heavy labor required by the physical aspects of the business. Following his back injury, Terry ceased performing heavy labor duties for Springhill. Thereafter, he worked roughly ten hours per week performing light sedentary work and management activities. On July 27, 1984, Terry filed an Employer's First Report of Occupational Injury and claim for compensation of lost wages due to his back injury.

During the spring of Terry's injury, Terry and Kathy, together, drew $2,500 per month from the income of Springhill. From January through June of 1984, Terry's share of net partnership earnings was $7,737.

The State Fund accepted liability for the claim and paid biweekly benefits from May 23, 1984, until September 7, 1989. Terry's temporary total and permanent partial disability rates are each $138.47 per week.

For 41 weeks from May 23, 1984, through March 5, 1985 (period A), Terry's payments were designated as permanent partial benefits. On January 29, 1985, surgery was performed to repair the herniated disc in Terry's back. The State Fund designated payments for the

period March 6, 1985, through December 23, 1987 (period B), as temporary total disability benefits. From December 24, 1987, to September 7, 1989 (89 weeks) (period C), payments were again designated as permanent partial benefits. In total for periods A and C, 130 weeks of the benefits paid to Terry were designated as permanent partial benefits.

At the time of trial, Terry was employed by the U.S. Department of Agriculture as a purchasing agent at Montana State University in Bozeman, Montana, at an annual salary of $15,111. Terry and Kathy still owned Springhill. Terry participated in the management decisions of the business, but did not receive a salary.

Terry filed his petition in the Workers' Compensation Court on September 6, 1988. The Workers' Compensation Court heard the case and issued its findings of fact and conclusions of law and judgment on September 7, 1989, awarding benefits. The court concluded that (1) Terry was 30% permanently partially disabled and thus entitled to receive 150 weeks (500 weeks x 30%) of benefits. (2) Any previously paid permanent partial benefits already paid to Terry are to be credited to the 150 weeks owed to him by insurer. Therefore, since State Fund had already paid permanent partial benefits to Terry for periods A and C totalling 130 weeks, State Fund owes him only 20 weeks of benefits at $138.47 per week. (3) State Fund is estopped from taking credit for previously paid temporary total disability benefits (for period B) by claiming the benefits should have been characterized as permanent partial. (4) Terry is entitled to an award of reasonable costs and attorney's

fees pursuant to § 39-71-612, MCA. Terry's attorney's fees and costs were denied after a hearing held on December 4, 1989. From this judgment and the order denying attorney's fees, both Terry and defendant appeal.

I.

Did the Workers' Compensation Court err in finding Terry 30% permanently partially disabled pursuant to § 39-71-706, MCA (1983)?

Terry contends that the Workers' Compensation Court should have found him 50% permanently partially disabled rather than 30%. The basis for this contention is Terry's evidence that the manager of a competing egg business earns $30,000 per year. Such a finding would entitle Terry to 250 weeks (50% x 500 weeks) of permanent partial benefits rather than 150 weeks (30% x 500 weeks).

At issue is the proper test to determine the degree of permanent partial disability. The factors this Court must consider in determining disability under § 39-71-706, MCA, include the claimant's age, education, work history, pain and disability, actual wage loss and loss of future earning capacity. Holton v. F. H. Stoltze Land & Lumber Co. (1981), 195 Mont. 263, 266, 637 P.2d 10, 12. This Court has emphasized that the primary factor in calculating an award is "earning capacity impairment." If the court can make a determination of the claimant's earning capacity impairment, it is not necessary for the court to consider any other factors. If the court can determine that a claimant's earning capacity has been impaired to a certain degree, then that is the figure to be used in computing his benefits. Hafer v. Anaconda

5

Aluminum Company (1984), 211 Mont. 345, 353, 684 P.2d 1114, 1118.

When reviewing a decision by the Workers' Compensation Court, this Court's function is to determine whether substantial evidence exists to support the Workers' Compensation Court's findings of fact and conclusions of law. Coles v. Seven Eleven Stores (1985), 217 Mont. 343, 347, 704 P.2d 1048, 1050.

The court, in Conclusion No. 4, assigned to Terry a 30% permanent partial disability rating pursuant to § 39-71-706, MCA. The court carefully set forth the criteria it considered in arriving at this permanent partial disability percentage:

> In considering an award for future loss of earning capacity, the Court must consider Claimant's age, education, work history and his physical condition post injury. Given the seriousness of his back injury, there is little argument that Claimant can not do heavy labor work. However, Claimant is a well educated person. He has finished high school and has attended college, though he did not complete a college degree. He served as a U.S. Navy aviation electrician. His non-formal education is significantly enhanced by his work history, which includes being a loan officer in a bank. Presently he works as a purchasing agent for the U.S. Department of Agriculture, earning slightly over $15,000 per year.
>
> At the time of his injury, Claimant's reported earnings for purposes of Workers' Compensation was $900/month or less than $11,000 per year. Though that amount is artificially limited by a statutory maximum (Section 39-71-118, MCA), the tax returns for the business demonstrates similar earnings for the Claimant. Taking all factors into account and recognizing the fact that mathematical certainty is virtually impossible to find, the Court concludes that a 30% disability rating is appropriate.

After a careful review of the record, we hold that the 30% figure is sufficiently supported therein. We affirm the Workers' Compensation Court on this issue.

Did the Workers' Compensation Court err by allowing defendant credit for payments paid to claimant from May 23, 1984, through March 5, 1985 (period A)?

State Fund characterized the benefits it paid to Terry for period A as permanent partial disability payments. Permanent partial disability payments may not exceed 500 weeks pursuant to § 39-71-703, MCA (1983), and would be deducted from Terry's eventual permanent disability award. Terry argues that his benefits for period A should be characterized as temporary total disability payments which are <u>unlimited</u> in duration according to § 39-71-706, MCA (1983), and which would have no effect on his eventual permanent disability award.

The court determined that Terry was not entitled to temporary total disability benefits for period A because of wages he received during this period. Terry takes exception to this strict reading of the statute.

Temporary total disability was defined at the time as:

[A] condition resulting from an injury as defined in this chapter that results in <u>total loss</u> of wages and exists until the injured worker <u>is as far restored as the permanent character of the injuries will permit.</u> Disability shall be supported by a preponderance of medical evidence. (Emphasis added.)

Section 39-71-116(19), MCA (1983).

On the other hand, the statute defining permanent partial disability stated:

[A] condition resulting from injury as defined in this chapter that results in the actual loss of earnings or earning capability less than total that exists after the

injured worker is as far restored <u>as the permanent character of the injuries will permit</u>. Disability shall be supported by a preponderance of medical evidence. (Emphasis added.)

Section 39-71-116(12), MCA (1983).

Under the foregoing statutes, the payments made to Terry for period A, immediately following his report of injury, could not have been permanent partial disability benefits because <u>he had not reached maximum healing</u>. Yet, that is what the State Fund suggests by designating his payments as permanent partial for period A. Likewise, because as a proprietor, or as a corporate officer, some of his income is designated as profits or as wages, he did not come under the definition of temporary total disability because his injury did not result in his total loss of wages.

One possible conclusion is that because he did not fit the definition of either permanent partial disability or temporary total disability, Terry was not entitled to any workers' compensation benefits at all for period A. However, the State Fund did not so argue. We conclude that it is precluded from so arguing. In her deposition, Eleanor Bowen, the Policy Services section supervisor for the State Fund, stated that, following discussions with Springhill bookkeeper Kathy Ryles, the State Fund credited Springhill for all premiums for workers' compensation paid for Terry from at least July 1984 through 1987. We hold that this operates as an admission on the part of the State Fund that Terry was entitled to workers' compensation benefits for period A. Moreover, the determination that premium payments were not due for this period was based on a conclusion on the part of the State Fund

8

that Terry was not earning wages during period A. We further hold that the State Fund is estopped from denying liability for temporary total disability benefits during period A.

In its judgment, the Workers' Compensation Court found Terry to be 30% permanently partially disabled and thus entitled to receive 150 weeks of benefits. Against that, the court allowed credit to the State Fund for 130 weeks of payments for the periods A and C. We vacate this part of the Workers' Compensation Court's order. We hold that the benefits paid to Terry from May 23, 1984, through March 5, 1985, a period of 41 weeks, should have been designated as temporary total rather than permanent partial benefits and should not have been deducted from Terry's total of 150 weeks of permanent partial benefits. On remand, the Workers' Compensation Court is directed to enter judgment in conformity with this holding.

### III.

Did the court err in denying Terry attorney's fees?

Under § 39-71-612, MCA (1983), successful claimants are entitled to attorney's fees and costs when an insurer acknowledges liability but disputes the amount of compensation due the claimant. This is the situation in this case. However, the court here denied attorney's fees under § 39-71-612, MCA (1983), when it decided that the State Fund could take credit for the payments from May 23, 1984, through March 5, 1985. Since we have decided that State Fund should not have been allowed to take this credit, Terry may be entitled to attorney's fees and costs pursuant to § 39-71-612, MCA

(1983), the law in effect at the time of his injury. We therefore reverse and remand this cause to the Workers' Compensation Court for proceedings and entry of judgment in conformity with this Opinion on the issue of attorney's fees and costs.

## IV.

Did the Workers' Compensation Court err in estopping the State Fund from taking credit for disability benefits paid from March 6, 1985, through December 24, 1987?

State Fund, in its brief, attacked the Workers' Compensation Court's findings regarding each element of estoppel as set forth in Lindblom v. Employers' Liability Assur. Corporation (1930), 88 Mont. 488, 295 P. 1007. The Workers' Compensation Court found the following facts to satisfy the first four elements of estoppel:

Terry was informed by State Fund that the benefits he received were for temporary total disability; Terry was never advised that the benefits were anything but temporary total and he had no reason to know since the dollar amount of each benefit was the same. Furthermore, Terry never tried to hide the fact that he received salary from Springhill; this salary was reported to State Fund; Kathy Ryles, bookkeeper, requested specific guidance from State Fund (but received none) as to correct reporting of Terry's earnings and simultaneous receipt of temporary total disability benefits.

The fifth and sixth elements of estoppel require a showing that Terry relied on State Fund's representations to his detriment. The Workers' Compensation Court satisfied these elements with its

finding that Terry would be harmed if the temporary total benefits were reclassified as permanent partial because permanent partial benefits may not exceed 500 weeks (§ 39-71-703, MCA (1983)) whereas temporary total benefits are unlimited.

There is substantial evidence in the record to support the Workers' Compensation Court on the issue of estoppel. We affirm the Workers' Compensation Court on the estoppel issue.

Affirmed in part, reversed in part, and remanded to the Workers' Compensation Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

11