No. 90-587

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

JAY ANDERSON,

       Claimant, Respondent,
       and Cross-Appellant,

-vs-

JERRY D. HAMMER and
STATE COMPENSATION MUTUAL
INSURANCE FUND,

       Defendant, Appellant,
       and Cross-Respondent.

FILED

FEB 21 1992

CLERK OF SUPREME COURT
Smith
STATE OF MONTANA

APPEAL FROM:   Workers' Compensation Court,
              The Honorable Timothy W. Reardon, Judge presiding.


COUNSEL OF RECORD:

       For Appellant and Cross-Respondent:

          Kelly M. O'Sullivan, Agency Legal Services
          Bureau, Helena, Montana.

       For Respondent and Cross-Appellant:

          Chris J. Ragar, Beck Law Offices,
          Bozeman, Montana.


Submitted: January 14, 1992

Decided: February 21, 1992

Filed:

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

The original opinion in this case, dated September 16, 1991, and filed that same date, was withdrawn on November 22, 1991. We hereby clarify that original opinion.

The Workers' Compensation Court awarded claimant 500 weeks of permanent partial disability benefits at the rate of $57.86 per week. Both claimant and the State Fund appeal.

We reverse and remand as to issues one and three. We affirm issue two.

Claimant raises the following issue:

1.  Whether in computing lost earning capacity, the Workers' Compensation Court erroneously compared 1981 "old dollars" to 1990 "new dollars" without updating the 1981 figures.

The State Fund raises two additional issues:

2.  Whether the Workers' Compensation Court erred in finding that claimant suffered a whole person injury and therefore was entitled to 500 weeks of benefits.

3.  Whether the Workers' Compensation Court erred in failing to include the value of room and board provided to claimant by his employer as part of his compensation in the calculation of his post-injury wages.

Claimant Jay Anderson, a cowboy, maintained a sporadic and short term pre-injury work history. He worked as a laborer in the summer months for his uncles as a block layer and carpenter. He was not fully apprenticed in either occupation. He sheared sheep for his father for approximately two months a year. In 1979, claimant

2

began working for the Peavey Company as a feed plant operator. He worked in that position for about two and one-half years. His ending salary was $5.35 per hour.

In 1981, claimant began working as a ranch hand for Mr. Hammer. His typical duties included fencing, calving, herding cattle, and repairing bridges. On July 23, 1986, while trying to round up a stray calf, claimant fell from his horse. The horse rolled on top of him, fracturing his left upper arm. At the time of the injury, claimant was earning $650 per month. In addition to a monthly salary, Hammer provided claimant with fringe benefits which included a mobile home, lunches, one-half of a beef per year, and some pasturage for claimant's horse.

Claimant's x-rays revealed a comminuted fracture through the mid-shaft of the left humerus. Dr. Frank Humberger, an orthopedic surgeon, noted radial nerve palsy of the left arm. On July 24, 1986, Dr. Humberger performed surgery on claimant's left humerus to stabilize the bone. Claimant's arm failed to heal properly. In April 1988, Dr. Humberger performed a successful bone graft to stimulate healing. Subsequently, claimant's humerus healed. However, claimant developed significant problems with the radial nerve. He experienced numbness and considerable pain in the left upper extremity. Claimant continued to work for Hammer but has had significant pain when performing his tasks.

Dr. Humberger stated that claimant has residual problems in his shoulder consisting of bicipital tendonitis, significant symptoms of rotator cuff tendonitis, and symptoms of subacromial

3

bursitis. He also testified that claimant will continue to have permanent residual problems from the arm injury and that claimant has reached maximum healing with regard to his injury.

The State Fund's witness, Dr. Canty, assigned an impairment rating of 15 percent permanent partial impairment of the upper left extremity. This represented a nine percent permanent partial impairment of the whole person. Based on this conclusion, the State Fund paid a Holton award of 45 weeks at claimant's permanent partial disability rate of $149.50 per week. Dr. Canty did not disagree with Dr. Humberger's deposition and he agreed that the orthopedic surgeon should ultimately decide what the claimant could and could not do for employment activities.

Gary Lusin, a licensed physical therapist, examined claimant on November 3 and December 13, 1989, to prepare a Functional Capabilities Assessment (FCA). The FCA qualified claimant for the medium physical demand level. The medium range required lifting 50 to 75 pounds on an occasional basis, 20 pounds frequently, and 10 pounds constantly. Claimant just met the lower threshold requirement of the medium physical demand level. In Mr. Lusin's opinion, claimant had a limited range of motion of combination shoulder flexion and abduction, and limited external rotation of the left shoulder. He found visible and palpable atrophy over the infraspinatus, teres minor, trapezius, and pectoralis, and weakness throughout the rotator cuff muscles.

Norm Johnson, an employment counselor, met with claimant and reviewed the depositions of claimant, Drs. Humberger and Canty,

4

Jerry Hammer, Gary Lusin, and Karen Black. Johnson administered the General Aptitude Test Battery to claimant. The results of the test demonstrated that claimant would be slow in jobs requiring numerical skills and hearing skills, as well as general learning skills and reasoning ability. Johnson concluded claimant has a pre-injury earning capacity at Peavey in Miles City of $7.10 per hour, plus $1.56 per hour in fringe benefits, with seven years experience. Johnson's contact with an individual at Peavey (now Con Agra) indicated that entry level employees started at $5.00 per hour and went up to $5.50 per hour after 60 days.

Karen Black, a vocational expert, contacted a personnel officer who stated that a feed plant operator earned from $6.00 per hour to $6.50 per hour at the entry level. Black testified she did not know what claimant's pre-injury earning capacity was. She also did not estimate claimant's decrease of access to the labor market. She concurred that claimant's current employment should be limited within the range of the FCA.

On August 27, 1990, the Workers' Compensation Court issued its findings. The court concluded that as a result of his injury, claimant's ability to earn in the open labor market had been substantially reduced. The court concluded claimant was entitled to 500 weeks of permanent partial disability benefits at the rate of $31.00 per week because he suffered an injury to the whole person and not just to his left arm. The court rejected claimant's lost earning capacity based upon jobs as a construction laborer or hod carrier because claimant lacked experience in those areas.

5

In the original order, the court made a mathematical error with regard to claimant's pre-injury wage. The claimant moved to amend the decision and requested a rehearing, asking the court to reconcile its finding of Peavey pre-injury wages of $5.35 per hour, with its later conclusion that claimant earned $5.25 per hour to correct a mathematical error, and to update the claimant's 1981 Peavey wages to the present time for the purposes of pre-injury earning capacity. The court amended its earlier decision by finding that claimant's Peavey wages were $5.35 per hour and that claimant's lost earning capacity is $2.15 per hour. The court granted claimant 500 weeks of benefits at $57.36 per week, but refused to update claimant's 1981 wages to 1990 and denied the rehearing. Both claimant and the State Fund appealed from the original and amended order.

On September 16, 1991, this Court issued an opinion which reversed and remanded on issue one and affirmed as to issues two and three. In the original opinion, we held that the value of room and board provided by the employer should not be included in the calculation of claimant's post-injury wages. On September 30, 1991, the State Fund petitioned this Court for a rehearing on this issue. On November 22, 1991, this Court granted the petition for rehearing and classified this case for oral argument. Oral argument was limited to discussion of whether the value of room and board provided by the employer should be included in the calculation of claimant's post-injury wages. On January 9, 1992,

6

this Court, sitting en banc, heard oral argument. We now issue the following opinion.

## I

Whether in computing lost earning capacity, the Workers' Compensation Court erroneously compared 1981 "old dollars" to 1990 "new dollars" without updating the 1981 figures.

Because the injury occurred prior to 1987, pre-1987 statutory and case law applies. Watson v. Seeking (1988), 234 Mont. 309, 312, 763 P.2d 328, 331.

We will not disturb a decision by the Workers' Compensation Court where there is substantial credible evidence to support the findings of the court. Dunn v. Champion International Corp. (1986), 222 Mont. 142, 147, 720 P.2d 1186, 1189. Claimant argues that the court failed to bring his pre-injury earning capacity of $5.35 per hour in 1981 to 1990 wage levels. We agree. As we have previously stated:

> "The ultimate objective of the disability test is by discounting the above variables to determine the wage that would have been paid in the open labor market under normal employment conditions to claimant as injured, taking wage levels, hours of work, and claimant's age and state of training *as of exactly the same period* used for calculating actual wages earned before the injury."

McDanold v. B.N. Transport, Inc. (1984), 208 Mont. 470, 480, 679 P.2d 1188, 1193 (quoting Fermo v. Superline Products (1978), 175 Mont. 345, 349, 574 P.2d 251, 253).

The court found claimant's pre-injury earning capacity at Peavey to be $5.35 per hour and his post-injury earning capacity to be $3.20 per hour. The court then subtracted the 1990 post-injury

7

earning capacity from the 1981 pre-injury earning capacity to find claimant's lost earning capacity. "This method is a misapplication of the law in *Olson* [v. Manion's Inc. (1973), 162 Mont. 197, 510 P.2d 6] and directly contradicts later holdings of this Court that pre-injury and post-injury wages must be compared for the same period of time." McDanold, 679 P.2d at 1193. It is patently unfair to compare wages in 1990 to wages in 1981. McDanold, 679 P.2d at 1193. The court should take into account increases in wages during the periods of pre-injury earning capacity and post-injury earning capacity.

> [E]arning capacity must be measured by comparing pre-injury earning capacity with post-injury earning capacity *in the same time frame*. So, in order to properly calculate claimant's permanent partial disability rate, we would need to know what the job claimant held in September of 1978 would pay *today*. No evidence was presented as to that pay rate.

Lamb v. Missoula Imports, Inc. (1988), 230 Mont. 183, 198, 748 P.2d 965, 967.

Here evidence indicated that claimant's wages increased over the last nine years. Norm Johnson testified by deposition that Peavey would pay $7.10 per hour, plus fringe benefits, after seven years of experience. He also testified that his contacts with Peavey indicated entry level employees started at $5.00 per hour and increased to $5.50 per hour after 60 days. Karen Black testified that entry level jobs at Peavey would pay between $6.00 and $6.50 per hour. In addition, claimant testified he received pay raises over his two and one-half years of working at Peavey.

8

There is no evidence that Peavey wages have remained static over nine years. Therefore, the court must determine what claimant would have earned in 1990 as a plant operator.

Claimant requested that this Court issue a finding regarding claimant's pre-injury wage because the evidence comes from deposition testimony. Dunn, 720 P.2d at 1189. We decline to do so because of the conflicting nature of the testimony regarding claimant's pre-injury wage. Instead, we remand to the Workers' Compensation Court to determine claimant's pre-injury earning capacity.

## II

Whether the Workers' Compensation Court erred in finding that claimant suffered a whole person injury and therefore was entitled to 500 weeks of benefits.

The State Fund relied primarily on § 39-71-705(1), MCA (1985), which reads as follows:

> (1) In addition to temporary total disability benefits allowed in this chapter, indemnity benefits for loss of a member shall be paid at the weekly rate provided in 39-71-703 and shall be paid for the following periods: one arm at or near shoulder...................280 weeks
> . . . .

The court held that claimant was permanently partially disabled and entitled to 500 weeks of permanent partial disability benefits because the injury was not limited to the arm and shoulder area, but to the "whole person." There is substantial credible evidence to support the court's finding. Dr. Humberger stated that claimant continued to experience intermittent problems of pain

associated with the radial nerve injury. The radial nerve is easily reinjured whenever claimant bumps the arm. Claimant complained of pain over the apex of the shoulder and over the shoulder blade. He complained of pain in and about the shoulder when lifting and carrying. The soft tissue injuries claimant suffered are permanent. The doctor stated claimant has had symptoms of bicipital tendonitis, rotator cuff tendonitis, and symptoms suggestive of subacromial bursitis. Claimant would continue to have residual problems. The doctor stated that these symptoms were a result of the accident in 1986.

Mr. Lusin testified that claimant suffered from atrophy in the infraspinatus, teres minor, upper trapezius, and pectoralis. Claimant's FCA report confirmed claimant's weakness in the left shoulder and upper extremity which appear to be a result from the injury. The State Fund's witness, Dr. Canty, did not disagree with Dr. Humberger's opinion with regard to claimant's injury.

Claimant's testimony was consistent with the conclusions of the doctor and physical therapist. He stated his chest muscles would start tightening up and aching. He had pain in and around the shoulder area.

The State Fund argued that Obie v. Obie Sons, Inc. (1963), 143 Mont. 1, 386 P.2d 68, was controlling. In that case, we overturned a district court's finding on appeal from the Industrial Accident Board that claimant was entitled to 500 weeks of benefits because the court did not have any additional evidence relating to the physical condition of the claimant. In this case, we will not

disturb the Workers' Compensation Court's findings where there is substantial evidence to support those findings. Dunn, 720 P.2d at 1189. We conclude that there is substantial evidence to uphold the Workers' Compensation Court's finding of a whole person injury.

## III

Whether the Workers' Compensation Court erred in failing to include the value of room and board provided to claimant by his employer as part of his compensation in the calculation of his post-injury wages.

In determining claimant's post-injury earning capacity, the Workers' Compensation Court used claimant's $750 monthly salary and did not include room and board. The court arrived at $3.20 per hour as claimant's post-injury earning capacity.

The relevant statute is § 39-71-116(20), MCA (1985), which defines wages as:

> [T]he average gross earnings received by the employee at the time of the injury for the usual hours of employment in a week, and overtime is not to be considered. Sick leave benefits accrued by employees of public corporations, as defined by subsection (16) of this section, are considered wages.

Previously, we have interpreted this definition of "wages" as simply meaning gross earnings. Scyphers v. H & H Lumber (1988), 237 Mont. 424, 426, 774 P.2d 393, 394. In Scyphers, this Court adopted the economic gain standard in determining what constituted gross income. Scyphers, 774 P.2d at 394. The distinction rested upon whether the payment was actually a reimbursement for employment-related expenses, or whether the payment consisted of a

11

real economic gain to the employee. Scyphers, 774 P.2d at 394. We approved of the analysis as described by Professor Larson in his treatise on workers' compensation:

> In computing actual earnings as the beginning point of wage-basis calculations, there should be included not only wages and salary but any thing of value received as consideration for the work, as, for example, tips, bonuses, commissions and room and board, constituting real economic gain to the employee. [Emphasis added.]

2 Larson, The Law of Workmens' Compensation, § 60.12(a) (1989).

In Scyphers, the claimant, a long haul truck driver, was compensated by the employer at a rate of $0.14 per mile, plus $0.03 per mile "per diem." The claimant was not required to keep records of expenses for meals and lodging. Instead, the employer simply paid the "per diem" amount. We concluded that the three-cents-per mile "per diem" was not a reimbursement to the injured employee for out of pocket expenses, but instead constituted real economic gain. Scyphers, 774 P.2d at 394-95.

The Court notes that in 1987 the legislature enacted § 39-71-123, MCA, providing that "[w]ages include but are not limited to . . . (b) board, lodging, rent, or housing if it constitutes a part of the employee's remuneration and is based on its actual value . . . ."

In this instance, room and board was provided to claimant as partial compensation for working on the ranch. The room and board was not a reimbursement to the claimant for out-of-pocket expenses, rather it constituted a real economic gain to the claimant. We hold that the value of the room and board constituted gross

earnings and that it be included in claimant's post-injury wages. We affirm as to issue two. We reverse and remand issues one and three to the Workers' Compensation Court to determine claimant's pre-injury earning capacity, and if possible on the record before it, the value of the room and board.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

13

Justice Terry N. Trieweiler specially concurring.

I concur with the result of the majority opinion, but do not agree with all that is said in part III of that opinion.

Specifically, I disagree that § 39-71-116(20), MCA (1985), is the relevant statute under which to analyze claimant's disability benefits pursuant to § 39-71-703, MCA (1985). Partial disability benefits, pursuant to § 703, are based upon the difference between pre-injury and post-injury "earning capacity." Wages are only one factor to be considered and are not determinative of either pre-injury or post-injury capacity. However, I agree that the value of claimant's room and board were relevant to a determination of claimant's post-injury earning capacity, just as it is relevant to a determination of his pre-injury earning capacity.

I also fully agree with the Court's decision in Issues I and II of its opinion.

_____
Justice