No. 91-499

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

WILLIAM T. CHAGNON,

      Claimant and Appellant,

-vs-

TILLEMAN MOTOR COMPANY,

      Employer,

  and

THE TRAVELERS INSURANCE COMPANY,

      Defendant and Respondent

APPEAL FROM: Workers' Compensation Court,
The Honorable Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Randall O. Skorheim; Overfelt Law Firm, Great Falls,
          Montana

      For Respondent:

          Thomas A. Marra; Marra, Wenz, Johnson & Hopkins,
          Great Falls, Montana

FILED

Filed: MAR 2 1993

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Submitted on Briefs: April 15, 1992

Decided: March 2, 1993

Justice Karla M. Gray delivered the Opinion of the Court.

William Chagnon appeals from the judgment of the Workers' Compensation Court awarding him permanent partial disability benefits and attorney's fees and costs, and crediting the Travelers Insurance Company for previous overpayment of temporary total disability benefits. The Travelers Insurance Company cross-appeals the award of attorney's fees and costs. We affirm.

We phrase the issues on appeal as follows:

1. Did the Workers' Compensation Court err in refusing to utilize Chagnon's first post-injury full-time wage in calculating his permanent partial disability benefits under § 39-71-703, MCA (1985)?

2. Did the Workers' Compensation Court err in crediting Travelers for benefits paid while Chagnon was working?

3. Did the Workers' Compensation Court err in awarding attorney's fees and costs?

William Chagnon (Chagnon) worked for twelve years in the autobody repair business. In March of 1985, he began working for Tilleman Motor Company (Tilleman) in Havre, Montana. He worked up to seventeen hours a day and spent most of his time spray painting vehicles. On October 22, 1985, he stopped working at Tilleman, claiming that he had developed respiratory and physical neurological problems from exposure to paint fumes. Chagnon was 30 years old at the time and earned approximately $500 per week.

Chagnon filed his claim for compensation on November 4, 1985.

2

Tilleman was enrolled in Plan II of the Workers' Compensation Act and insured by the Travelers Insurance Company (Travelers). Shortly after Chagnon filed his claim, Travelers began weekly payments of $276.39 per week, reserving all rights under § 39-71-608, MCA (1985).

In February of 1988, Travelers petitioned the Division of Workers' Compensation to request an examination of Chagnon by a medical panel and for authorization to terminate occupational disease benefits. In March of 1988, Chagnon filed a petition with the Workers' Compensation Court for benefits under the Workers' Compensation Act. The Workers' Compensation Court granted Travelers' motion to stay proceedings there until the Division had ruled on its petition under the Occupational Disease Act.

After receiving medical information from two doctors indicating that Chagnon could return to work, Travelers terminated Chagnon's benefits on August 25, 1988, pursuant to § 39-71-609, MCA (1985). Chagnon petitioned for, and received, disability benefits for an additional 49 days pending the hearing before the Division.

The Division hearing was held on December 2, 1988. The Division subsequently issued an order determining that Chagnon's disability was compensable under the Occupational Disease Act and that Travelers was not entitled to retroactive reimbursement for benefits paid prior to August 25, 1988. The Division also denied Chagnon's request for attorney's fees and costs.

Chagnon worked during two periods of time while receiving total disability benefits from Travelers. From July 15, 1986, to

3

December 15, 1986, he worked sporadically for Hi-Line Glass, earning $5.00 per hour. Beginning July 9, 1988, Chagnon worked for Montana Sign Company and earned $5.25 per hour. He did not notify Travelers he was working on either occasion. Chagnon returned to work at Hi-Line Glass in July of 1989; he started at $5.25 per hour and was earning $7.00 per hour at the time of trial.

In July of 1989, Chagnon moved for summary judgment in the Workers' Compensation Court on the issue of whether he had suffered an industrial injury compensable under the Workers' Compensation Act. In granting his motion, the Workers' Compensation Court determined that he had developed reactive airway disease from exposure to chemicals on October 22, 1985. Travelers did not appeal.

Chagnon petitioned the Workers' Compensation Court again on July 6, 1990, for a determination of the amount of benefits to which he was entitled. The case proceeded to trial on October 3, 1990. A hearings examiner heard the case and submitted his Findings of Fact and Conclusions of Law which subsequently were adopted by the Workers' Compensation Court. The Workers' Compensation Court's Order adjudged Chagnon permanently partially disabled and entitled to permanent partial disability benefits of $88.60 per week for 500 weeks; it also awarded him attorney's fees and costs. The Workers' Compensation Court then credited Travelers $9,397.26 for benefits it paid while, unknown to Travelers, Chagnon worked at Hi-Line Glass and Montana Sign Company. Chagnon appeals the amount of permanent partial disability benefits awarded and the

4

credit received by Travelers. Travelers appeals only the award of attorney's fees and costs.

Did the Workers' Compensation Court err in refusing to utilize Chagnon's first post-injury full-time wage in calculating his permanent partial disability benefits under § 39-71-703, MCA (1985)?

Initially, we note that the statute in effect at the time of the injury sets the standard by which a claimant's benefits are to be computed. Watson v. Seekins (1988), 234 Mont. 309, 312, 763 P.2d 328, 331. For his claim of permanent partial disability, Chagnon consistently has elected to proceed under § 39-71-703, MCA (1985), which calculates permanent partial disability benefits based on an actual loss of earning capacity. At the time of Chagnon's injury, § 39-71-703, MCA (1985), read in pertinent part:

> (1) Weekly compensation benefits for injury producing partial disability shall be 66 2/3% of the actual diminution in the worker's earning capacity measured in dollars, subject to a maximum of 1/2 the state's average weekly wage.

> (2) The compensation shall be paid during the period of disability, not exceeding, however, 500 weeks in cases of partial disability. . . .

It is well established that loss of earning capacity under § 39-71-703, MCA, is the permanent diminution of the ability to earn money in the future. Hurley v. Dupuis (1988), 233 Mont. 242, 246, 759 P.2d 996, 998. In addition to the permanent aspect of loss of earning capacity, we have determined that:

> [e]arning capacity is not only determined by a comparison of pre-injury and post-injury wages, but also by age,

5

occupational skills, education, previous health, remaining number of productive years and degree of physical or mental impairment.

Hurley, 759 P.2d at 999 (citations omitted).

Here, the Workers' Compensation Court determined that Chagnon was permanently partially disabled and entitled to permanent partial disability benefits for 500 weeks. The court went on to address the earning capacity factors and determined:

- Chagnon is relatively young;
- his only vocational restriction is a requirement to avoid paint fumes;
- he has a solid job earning $7.00 per hour with potential for promotion;
- his previous health was good; and,
- he has approximately thirty years left to work.

The Workers' Compensation Court then calculated Chagnon's weekly benefits at $88.60 per week. To reach this figure, the court subtracted Chagnon's post-injury earning capacity of $7.00 per hour from his pre-injury earning capacity of $10.32 per hour, resulting in a diminution of $3.32 per hour. Multiplying the hourly wage loss by 40 hours to reach a weekly wage loss of $132.80, the court then multiplied the weekly figure by .667, pursuant to § 39-71-703, (1985) MCA, to reach a permanent partial disability award of $88.60 per week for 500 weeks.

Chagnon contends that he is entitled to permanent partial disability benefits in excess of those awarded. His only specification of error in this regard is his claim that the Workers' Compensation Court erred by using $7.00 per hour, the wage he was earning at the time of trial, as his post-injury earning capacity. He argues that the wage he earned in his first full-time

6

job after his injury, $5.25 per hour at Montana Sign Company, is the proper measure of his post-injury earning capacity. We disagree.

The record is clear that the $5.25 per hour wage is not Chagnon's post-injury earning capacity; he was earning $7.00 per hour at the time of trial. To accept Chagnon's argument would necessitate ignoring the well-established rule that § 39-71-703, MCA (1985), contemplates a <u>permanent</u> diminution in earning capacity. <u>Hurley</u>, 759 P.2d at 998 (emphasis added).

Chagnon also argues that our recent decision in Anderson v. Hammer (1992), 252 Mont. 73, 826 P.2d 931, supports his argument that $5.25 per hour, the wage earned closest in time to his injury, best reflects post-injury earning capacity. Chagnon misreads <u>Anderson</u>.

In <u>Anderson</u>, we restated the principle first set forth in McDanold v. B.N. Transport, Inc. (1984), 208 Mont. 470, 679 P.2d 1188, that a meaningful comparison of pre-injury and post-injury earning capacities can be made only if the figures are adjusted to reflect the same time period. We recognized the unfairness of comparing, for example, 1981 dollars to 1990 dollars when computing loss of earning capacity. <u>Anderson</u>, 826 P.2d at 934.

<u>Anderson</u> addresses the proper updating of **pre**-injury earning capacity; it does not support or, indeed, relate to Chagnon's contention that the wages earned at his first **post**-injury job reflect post-injury earning capacity because they are "closest in time to his injury." Thus, <u>Anderson</u> simply is inapplicable here.

7

Finally, Chagnon claims that the Workers' Compensation Court erroneously concluded that the "parties agree that $7.00 per hour is a reasonable measure of post-injury earning capacity." While Chagnon technically may be correct in that there appears to be no evidence of such an agreement on the record, the Workers' Compensation Court's use of $7.00 per hour to reflect Chagnon's post-injury earning capacity has ample record support. We hold that, based on the record before it, the Workers' Compensation Court did not err in refusing to utilize $5.25 per hour as Chagnon's post-injury earning capacity when calculating permanent partial disability benefits under § 39-71-703, MCA (1985).

Did the Workers' Compensation Court err in crediting Travelers for benefits paid while Chagnon was working?

Travelers paid Chagnon $276.39 per week from October 22, 1985, through October 20, 1988. From July 15, 1986, until December 15, 1986, Chagnon worked for Hi-Line Glass, and from July 9, 1988 to June 23, 1989, he worked for Montana Sign Company. The Workers' Compensation Court reviewed Chagnon's work history and determined that he had worked a total of 35 weeks while receiving temporary total disability benefits. He did not report his 1986 employment at Hi-Line Glass to Travelers until March of 1988, long after that employment had ceased and he had received the benefits paid by Travelers. Travelers did not learn of his 1988 employment with Montana Sign Company until the Division hearing in December of 1988. The Workers' Compensation Court determined that the

8

temporary total disability benefits of $276.39 per week paid during those 35 weeks should have been permanent partial disability benefits of $88.60 per week. The court credited the difference ($9,397.26) against the 500 weeks of permanent partial disability benefits to which it determined Chagnon was entitled under the Workers' Compensation Act.

Chagnon asserts two principal arguments regarding the credit to Travelers. First, he argues that the decision of the Division of Workers' Compensation that Travelers did not qualify for a credit renders the issue res judicata. Second, he argues that Travelers' initial acceptance of his disability under the Occupational Disease Act precludes retroactive application of Workers' Compensation Act definitions to the time period he received the benefits. We address each contention in turn, noting that Chagnon does not dispute the repayment of benefits for the 49-day period pending the Division hearing.

Chagnon is correct that the Division's ruling concludes that Travelers was obligated to pay benefits under the Occupational Disease Act from October 22, 1985, through August 25, 1988, with no credit allowed to Travelers. That decision does not, however, render the credit issue res judicata in the Workers' Compensation Court.

The necessary requisites for applying the doctrine of res judicata are:

> 1) the parties or privies must be the same;
> 2) the subject matter of the action must be the same;
> 3) the issues must be the same and relate to

9

                    the same subject matter; and
4)        the capacities of the persons must be the same
          in relation to the subject matter and issues
          between them.

Poppleton v. Rollins, Inc. (1987), 226 Mont. 267, 270, 735 P.2d

286, 288.  In Poppleton, the Division initially paid the claimant

occupational disease benefits.  After she petitioned the Workers'

Compensation Court for workers' compensation benefits, the insurer

argued that res judicata barred her claim because she had received

occupational disease benefits.  We concluded in Poppleton that the

issues  involved  in  claims  for  benefits  under  the  Workers'

Compensation Act and the Occupational Disease Act were not the

same, and therefore, the third requirement for res judicata was

lacking.  Poppleton, 735 P.2d at 288.  As in Poppleton, the issue

of Travelers' credit is analyzed differently under each Act.

        Proceeding before the Division, Travelers argued that it was

due a credit for all benefits paid after October of 1986, based on

a 1986 letter from Dr. James Elliot.  Travelers claimed that this

letter indicated that Chagnon could return to work if he avoided

paint fumes, therefore precluding altogether Chagnon's entitlement

to total disability benefits under the Occupational Disease Act.

The Division concluded that it was Travelers' duty to manage its

claims and that it was not entitled to retroactive reimbursement of

benefits when it failed to terminate Chagnon's benefits pursuant to

Dr. Elliot's 1986 letter.

        Before the Workers' Compensation Court, Travelers argued that

it was due a credit based on Chagnon's failure to report his work

activities during the time he received temporary total disability

                              10

benefits. The Workers' Compensation Court applied the Workers' Compensation Act's requirement of a "total loss of wages," under § 39-71-116(19), MCA (1985), and concluded that Travelers was entitled to a credit for the weeks Chagnon worked and continued to receive temporary total disability benefits. Clearly, the issue before the Division was distinct from that presented to the Workers' Compensation Court. Travelers claimed the credit for different time periods and on different legal grounds under the Occupational Disease Act and the Workers' Compensation Act. We hold that the doctrine of res judicata does not bar Travelers' claim for a credit under the Workers' Compensation Act.

Chagnon then argues that the Workers' Compensation Court cannot apply Workers' Compensation Act definitions to the period of time he received temporary total disability benefits because Travelers originally accepted liability under the Occupational Disease Act and labeled the benefits as such. He contends specifically that under the Occupational Disease Act, total disability payments do not require a "total loss of wages" and, therefore, he could work without informing Travelers and without losing his occupational disease benefits. Chagnon concludes that the Workers' Compensation Court cannot impose retroactively the "total loss of wages" requirement of the Workers' Compensation Act to his claim for Workers' Compensation Act benefits. We disagree.

Once a claimant invokes the jurisdiction of the Workers' Compensation Court, that court has exclusive jurisdiction to determine whether the claimant is entitled to workers' compensation

11

benefits. Cocking v. Hillhaven Corp. (1987), 225 Mont. 369, 372, 732 P.2d 1333, 1335. From the outset, Chagnon consistently has asserted his right to proceed and to secure disability benefits under the Workers' Compensation Act. We have held that when a claimant's condition qualifies for benefits under the Workers' Compensation Act and the Occupational Disease Act, the claimant can elect his or her remedy under either Act. Ridenour v. Equity Supply Co. (1983), 204 Mont. 473, 477, 665 P.2d 783, 786; Bremer v. Buerkle (1986), 223 Mont. 495, 501, 727 P.2d 529, 533.

Chagnon's claim for workers' compensation benefits requires the Workers' Compensation Court to apply the Workers' Compensation Act and its definitions to his claim. Indeed, only the Workers' Compensation Court can decide questions of disputed benefits under the Workers' Compensation Act. Section 39-71-2905, MCA (1985). Chagnon cannot receive the best of both worlds; if he seeks workers' compensation benefits, Workers' Compensation Act definitions apply; if he seeks occupational disease benefits, Occupational Disease Act definitions apply.

Chagnon has maintained consistently that he suffered an industrial injury, not an occupational disease. He elected to petition the Workers' Compensation Court for a determination of benefits, asserting that he had been paid "temporary total disability benefits" beginning October 22, 1985. He also asserted that he continued to be totally disabled as a result of his industrial injury and that, in the future, he would be entitled to permanent partial disability benefits under the Workers'

12

Compensation Act. Chagnon's petition indisputably claims eligibility for temporary total benefits, to be followed by permanent partial benefits, under the Workers' Compensation Act.

In workers' compensation cases, the person who asserts the right has the burden of proceeding and proving the claim by a preponderance of the evidence. Ricks v. Teslow Consol. (1973), 162 Mont. 469, 483, 512 P.2d 1304, 1312. In his petition, Chagnon stated that he had received temporary total disability payments and continued to suffer total disability. Under the Workers' Compensation Act, temporary total disability is defined as "a condition resulting from an injury as defined in this chapter that results in a total loss of wages and exists until the injured worker is as far restored as the permanent character of the injuries will permit." Section 39-71-116(19), MCA (1985).

To prove entitlement to temporary total disability benefits as alleged his petition, Chagnon had the burden of establishing that:

1) he suffered an injury resulting in a total loss of wages; and
2) he had reached less than maximum medical healing.

Baldwin v. Orient Express Restaurant (1990), 242 Mont. 373, 375, 791 P.2d 49, 50. In this case, Chagnon failed to carry his burden. Chagnon did not, and, indeed, could not prove that he was entitled to temporary total disability benefits under the Workers' Compensation Act for the periods of time he worked. The phrase "total loss of wages" precludes the receipt of any wages by the claimant. See Ryles v. Springhill Ranch Eggs (1991), 247 Mont. 276, 282, 806 P.2d 525, 528. Chagnon's wage stubs illustrate that

13

he did not suffer a total loss of wages for the weeks in question.

We refuse to limit the Workers' Compensation Court's ability to decide all issues properly before it merely because an insurer labels initial benefits paid under a reservation of rights as occupational disease benefits, especially when the claimant consistently maintains he suffers from an industrial injury and proceeds pursuant to the Workers' Compensation Act. The Workers' Compensation Court correctly applied Workers' Compensation Act definitions and determined that Chagnon was not eligible for temporary total disability benefits during the time periods he worked.

Chagnon also argues that because Travelers did not effectively terminate benefits pursuant to § 39-71-609, MCA (1985), when it learned of Chagnon's return to work, it is precluded from claiming a credit for the periods of time Chagnon worked. We disagree.

Chagnon is correct in stating that an insurer's termination of benefits without the statutorily-required 14 days notice is ineffective. See Clark v. Hensel Phelps Constr. Co. (1977), 172 Mont. 8, 11, 560 P.2d 515, 517. In this case, Travelers did not terminate payments without notice, but carefully followed the requirements of § 39-71-609, MCA (1985), in terminating Chagnon's benefits in August of 1988. It did not terminate or attempt to terminate benefits earlier; thus, the consequences of an ineffective termination by an insurer, as covered by § 39-71-609, MCA (1985), are not relevant to the situation before us.

As discussed above, the Workers' Compensation Court has

exclusive jurisdiction over all disputes arising from workers' compensation claims. Section 39-71-2905, MCA (1985); Vigue v. Evans Prod. Co. (1980), 187 Mont. 1, 4, 608 P.2d 488, 489. Section 39-71-609, MCA (1985), does not prevent the Workers' Compensation Court from inquiring into Chagnon's eligibility for Workers' Compensation benefits. Regardless of Travelers' failure to terminate benefits after learning of Chagnon's employment activities, the Workers' Compensation Court properly determined that Chagnon simply was not eligible for or entitled to temporary total disability benefits for the time periods in which he worked. We hold that the Workers' Compensation Court did not err in crediting Travelers for benefits paid while Chagnon was working.

Did the Workers' Compensation Court err in awarding attorney's fees and costs?

Applying §§ 39-71-611 and -612, MCA (1985), the Workers' Compensation Court awarded Chagnon reasonable attorney's fees and costs. On cross-appeal, Travelers argues that attorney's fees and costs were inappropriately awarded because the court also concluded that Chagnon deceptively concealed his return to work in 1986 and 1988. Travelers cites no authority for a denial of attorney's fees under these circumstances.

The relevant statute states:

(1) If an employer or an insurer pays or tenders payment of compensation under chapter 71 or 72 of this title but controversy relates to the amount of compensation due, the case is brought before the workers' compensation judge for adjudication of the controversy, and the award granted by the judge is greater than the amount paid or

15

> tendered by the employer or insurer, a reasonable attorney's fee as established by the workers' compensation judge if the case has gone to a hearing may be awarded by the judge in addition to the amount of compensation.

Section 39-71-612, MCA (1985). Notwithstanding use of the word "may," the statute does not leave an award of attorney's fees totally up to the discretion of the Workers' Compensation Court. Lamb v. Missoula Imports, Inc. (1988), 230 Mont. 183, 188, 748 P.2d 965, 968. We have stated many times that, under § 39-71-612, MCA (1985), if a dispute in the amount owed is resolved in favor of the claimant, this Court inevitably finds that an award of attorney's fees is appropriate. Buckman v. Montana Deaconess Hospital (1989), 238 Mont. 516, 521, 776 P.2d 1210, 1213 (citations omitted).

Although the Workers' Compensation Court's conclusions, and the supporting record, regarding the actions of Chagnon and his attorney raise concerns with this Court, the attorney's fees provision of the Workers' Compensation Act does not permit consideration of equitable arguments. Under the statute, Chagnon is entitled to recover attorney's fees and costs. There is no dispute that the amount of compensation remained in controversy and that the amount ultimately awarded exceeded the amounts paid or tendered. Although the parties disagree over the settlement amount Travelers offered before the hearing, Chagnon's permanent partial disability award exceeded all of the amounts asserted by the parties. Because the specific statutory language is met, we cannot hold that the Workers' Compensation Court erred in awarding Chagnon attorney's fees and costs.

16

Affirmed.

                                            _____
                                                          Justice

We concur:

_____



_____
                    Justices


Justice Terry N. Trieweiler specially concurring.

Based on the proof that was offered, I concur in the result of the majority opinion. However, I do not agree with all that is said therein.

                                            _____
                                                          Justice

17

March 2, 1993

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Randall O. Skorheim
OVERFELT LAW FIRM, P.C.
121 4th St. N., Suite 2E
Great Falls, MT 59401

Thomas A. Marra
Attorney at Law
P.O. Box 1525
Great Falls, MT 59403-1525

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy