No. 90-574

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

MICHELLE CHAPMAN,

Claimant and Appellant,

v.

RESEARCH COTTRELL,

Employer and Respondent,

and

NATIONAL UNION FIRE LOSS
OF PITTSBURGH,

Defendant and Respondent.

APPEAL FROM:   The Workers' Compensation Court
The Honorable Timothy W. Reardon, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Don Edgar Burris, Billings, Montana

For Respondent:

William J. Mattix, Crowley, Haughey, Hanson,
Toole & Dietrich, Billings, Montana

**FILED**

Filed:   MAY 23 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  April 18, 1991

Decided:  May 23, 1991

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Michelle Chapman appeals the decision of the Workers' Compensation Court, holding that the claimant failed to obtain approval of the insurer prior to changing her physician. We reverse the lower court.

The issue before the Court is whether the Workers' Compensation Court properly concluded that the claimant changed treating physicians without first getting permission from the insurer, in violation of Administrative Rule of Montana 24.29.1403.

Michelle Chapman was injured on May 16, 1989, while in the course and scope of her employment with Research Cottrell in Colstrip, Montana. The claimant sustained her injuries when she fell approximately 12 feet and landed on her side. The claimant reported her injury, and was instructed to rest for the remainder of her work shift.

After returning home, claimant's friends noticed her discomfort and drove her to a chiropractor, Dr. Howard Norris, in Forsyth. A brief examination, including x-ray film, was performed, and the claimant was released to return to work. On the following day, claimant reported for work although she continued to be in pain. She was told to discontinue work and was taken to the Colstrip Medical Clinic by a supervisor. There, the claimant was examined by Dr. William Anderson, who, after examining her, prescribed some medication and said she could return to work. Instead, she traveled to Billings to her father's home to

recuperate. She has not returned to Dr. Anderson and he has not treated her, other than with the prescription previously mentioned.

The claimant made two visits to the St. Vincent Hospital Emergency Room on May 18, where she saw Dr. George Angelos and Dr. Gary Mundy. Both doctors noted several contusions, but found no further injury. The claimant states that Dr. Mundy suggested she see a neurologist, Dr. Richard Nelson. On May 22, claimant returned to the St. Vincent Emergency Room, where she was examined by Dr. Kathi Hart, who prescribed changes in her medication and told her to return within a few days if her condition had not improved.

On June 12, the claimant saw Dr. Richard Nelson, who diagnosed cervical and lumbosacral sprain and possible disc herniation. A Magnetic Resonance Imaging scan was ordered, and was conducted by Dr. John Anderson. The MRI showed evidence of disc degeneration and a slight herniation in the lumbar region. Dr. Nelson thereafter reported that the claimant was disabled.

A few days prior to her initial consultation with Dr. Nelson, a letter was mailed to the claimant from the insurer informing her that she had the right to select her initial treating physician but that any change in physicians had to be authorized by the insurer. The claimant did not seek nor obtain authorization for Dr. Nelson's services.

By letter dated July 18, 1989, claimant was notified that the insurer did not and would not authorize treatment by Dr. Nelson.

3

Claimant was informed that treatment would be authorized with any orthopedic physician in Yellowstone County or any physician in the Billings Clinic. The letter further indicated that wage loss benefits would not be paid because the reports of Dr. Anderson, Dr. Norris, and the emergency room physicians all indicated no disability. The insurer likewise notified Dr. Nelson, Dr. John Anderson, Physical Therapist Mary Mistal, and the Billings MRI Center that their services were not authorized, and that the insurer was not responsible for payment. Nevertheless, payment was made by the insurer for medical services rendered prior to July 18, 1989.

An independent medical examination was arranged by the insurer to determine the nature of claimant's injury and the extent of her disability. Dr. William Shaw diagnosed significant decrease in the range of motion of the right shoulder and radicular pain, coupled with degenerative disc disease. He found that further treatment was warranted and that the claimant had not reached maximum healing. Upon receipt of Dr. Shaw's report, the insurer began payment of temporary total disability benefits retroactive to May 25, 1989. The insurer continued to refuse authorization for claimant to be treated by Dr. Nelson, asserting that Dr. William Anderson of Colstrip was the initial treating physician, even though Dr. Anderson was now 124 miles from where she resided.

Claimant filed a petition with the Workers' Compensation Court to resolve the dispute regarding the treating physician. The court

held that the insurer was liable for all medical bills up to July 18, 1989, when proper notification was given to the claimant that treatment by Dr. Nelson would not be authorized, but that all medical services provided by Dr. Nelson after that date were not the responsibility of the insurer. The court held that the insurer was required to specify its reasons for refusing to authorize a change of treating physician, and that the claimant could further petition the court if not satisfied with the insurer's reasoning for the refusal. Those reasons have never been provided. This appeal followed.

On appeal, the claimant asserts that Dr. Nelson was the first physician that she selected to treat her, and that she is entitled to a 20 percent penalty and attorney fees and costs. The chronology of her medical visits is:

1. Dr. Norris (Forsyth).
2. Dr. William Anderson (Colstrip).
3. St. Vincent Hospital ER Doctors Angelos, Mundy, and Hart (Billings).
4. Dr. Nelson (Billings).

The lower court did not find that Dr. Norris was the claimant's treating physician, but that "the insurer considered Dr. Anderson to be the treating physician." The insurer does not appeal this finding of fact. Therefore, this Court will not consider any contentions on the part of the insurer that Dr. Norris was the claimant's treating physician. Neither of the parties nor the court concluded that any of the emergency room physicians were the claimant's choice as treating physician. The issue then is

whether the claimant chose Dr. William Anderson as her treating physician or Dr. Richard Nelson.

The administrative rule in question, A.R.M. 24.29.1403, states: "The injured worker may select the physician to provide the initial treatment. Authorization is required to change treating physicians."

The claimant in this case did not actively choose Dr. Anderson as her treating physician. That choice of a physician was made by a supervisor who drove the claimant to Dr. Anderson. Claimant maintains, and we concur, that Dr. Anderson was not the physician selected as her initial treating physician.

The Workers' Compensation Court relied upon this Court's decision in Garland v. Anaconda Company, 177 Mont. 240, 244, 581 P.2d 431, 433 (1978), in determining that the claimant had made an unauthorized switch of treating physicians. The Court stated that the proper result when the claimant fails to comply with the rule is that the employer cannot be charged for the services of the unauthorized second doctor. However, Garland is factually distinguishable. In Garland, the claimant saw a chiropractor on his own initiative on four separate occasions. The chiropractor treated him, at his request, on a number of occasions. In the instant case, Dr. Anderson was not selected by the claimant, and the only treatment he performed was to prescribe medication, which was later discontinued by other physicians.

The claimant in this case continued to see several physicians until she found one who accurately diagnosed her injury. That was Dr. Richard Nelson. That diagnosis was borne out by an MRI scan and the injuries diagnosed to her lower back were later verified by the insurer's chosen physician, Dr. Shaw. It is clear that the diagnosis by Dr. Nelson was the first correct diagnosis. It was only after that diagnosis that claimant began a proper course of treatment for her work-related injury.

Dr. Anderson did not correctly diagnose claimant's injury. Therefore he could not have treated her for it. We find that the claimant's choice of physicians was proper in this instance, and accordingly reverse the lower court.

Under § 39-71-611, MCA, as amended in 1987, it was necessary for the Workers' Compensation Court to find that the insurer acted unreasonably before awarding attorney fees. Pursuant to § 39-71-2907, MCA, the same requirement is a prerequisite for an award of the statutory penalty. We conclude that there was evidence offered from which the trial court could find that the insurer acted reasonably, and therefore affirm the court's decision to deny attorney fees and penalty.

_____
Justice

We Concur:

_J. A. Turnage_
Chief Justice

_John Conway Harrison_

_R. C. McDonough_

_William E. Hunt Sr_
Justices