No. 83-350

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

_____

MAX E. SMALL,

Claimant, Respondent and Cross-Appellant,

-vs-

COMBUSTION ENGINEERING, Employer,

and

TRANSPORTATION INSURANCE CO.,

Defendant and Appellant.

_____

APPEAL FROM: Workers' Compensation Court, The Honorable Timothy
Reardon, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Garlington, Lohn & Robinson; Larry E. Riley,
Missoula, Montana

For Respondent:

Charles W. Hingle, Billings, Montana

_____

Submitted on Briefs: January 26, 1984

Decided: May 1, 1984

Filed: MAY 1 1984

*Ethel M. Harrison*
_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The Workers' Compensation Court found that claimant was permanently totally disabled. Defendant contends this was improper because claimant refused low-risk surgery with a 92% chance of restoring working ability. We affirm the Workers' Compensation Court.

On July 16, 1981, claimant suffered an industrial accident during his employment with Combustion Engineering in Colstrip, Montana. Claimant injured his right knee while working in a welding shop at the construction site. There is no dispute with regard to the temporary disability benefits paid. Following trial before the Workers' Compensation Court on May 13, 1983, the court entered its findings of fact, conclusions of law and judgment awarding permanent total disability to claimant. Defendant appeals.

Defendant's only issue is whether claimant is entitled to permanent total disability when he refuses to have surgery which is low risk and which has a 92% chance of restoring his working capacity. Claimant's only issue is whether there is substantial evidence to support the findings and conclusions of the Workers' Compensation Court. We will address both issues, recognizing that defendant's issue is actually a part of claimant's issue.

All parties agree that claimant has refused to have elective surgery to his right knee. Defendant emphasizes the facts and the law which suggest that an award of total permanent disability is improper where there is no reasonable basis for refusal to have low risk surgery. However, this approach does not adequately address the complex fact situation present here. Claimant's refusal to have surgery is not merely an exercise of his decision-making power after considering the risks attendant upon surgery. Claimant is

2

suffering from a manic-depressive disorder, which directly affects his capacity to make a reasoned election regarding surgery.

Claimant was treated by Dr. Teal, an orthopedic surgeon, and by Dr. Crowley, a psychiatrist. In addition, claimant was examined by a professor of rehabilitation counseling at Eastern Montana College and by a clinical psychologist. We have considered the depositions of these experts.

The pertinent portions of the undisputed findings of the Workers' Compensation Court are as follows:

"1. The claimant at the time of trial was a 32-year-old male, married with 3 dependent children and his wife was pregnant with a fourth child.

. . .

"4. On July 16, 1981, the claimant, while stepping through the doorway of a welding shack, stepped on a sample coupon that rolled and caused the claimant's right leg to slip back and out to the side; he immediately 'felt something give,' a 'twinge,' in his right knee. He was able to return to work, but it later began to swell and became painful.

. . .

"6. In 1972, the claimant injured his right knee while playing basketball. Dr. D. P. Jacobson performed a medial meniscectomy on his right knee and during the operation discovered an old rupture of the anterior cruciate ligament.

. . .

"12. There exists a surgical procedure to reconstruct and to repair the claimant's ruptured anterior cruciate ligament.

"13. The surgery has been 92 percent successful.

"14. If the surgery were unsuccessful, then the claimant's condition would remain unchanged or would slightly improve.

"15. The surgery has a low risk to life.

"16. The surgery involves a 5-10 percent chance of the claimant incurring phlebitis, a 1-30 percent chance of infection settling in and a 10 percent chance of an adverse reaction to an anesthetic.

3

"17. If the claimant submitted to the surgery, he would have to remain in the hospital for 4 or 5 days after the operation with severe pain for a few days and diminishing thereafter. Thereafter, the claimant's knee would be immobilized in a cast for approximately 6 weeks and then in a brace for approximately 6 weeks. The claimant could then return to work from 3 to 6 months after the brace was removed.

"18. If the claimant submitted to surgery, he would physically be able to return to work as a welder.

"19. If the claimant does not submit to surgery, then the claimant's knee instability will continue.

"20. In late July or early August 1982, the claimant was suffering from manic-depressive disorder. [Dr. William Crowley testified in deposition as follows:]

"Q. Would you explain for us in laymen's terms what you mean by 'manic-depressive disorder?'

"A. Yes. What I mean by manic-depressive disorder is that a patient has an in-born disturbance of their neurophysiology which has a cyclical basis. Now, it's not clear exactly why there is a cycle, how the cycle is regulated, but what happens is that a person's mood will gyrate sometimes quite rapidly from being very depressed and immobilized . . .. They will swing from that side often to the other side which is more euphoric in some cases, but not necessarily so because they may also be in a very irritable state. Now, Mr. Small is one of the people that, to me, appears to have much less of the euphoria and more of the irritable side of the manic state . . .."

"21. The claimant's manic-depressive disorder predates his July, 1981, industrial accident.

"22. The claimant's manic-depressive disorder is the result of abnormal body chemistry.

"23. The claimant's inability to work as a result of his July, 1981, industrial accident aggravated his preexisting manic-depressive disorder.

. . .

"26. The claimant's manic-depressive disorder will require treatment for the rest of his life . . ..

. . .

"28. During an acute episode (a period prior to and during hospitalization) of his manic-depressive disorder, the claimant is unable to work.

4

"29.  Life stresses, such as loss of a job, and a consequent inability to support oneself and family can aggravate, i.e., cause to become acutely symptomatic, a manic-depressive disorder.

"30.  The claimant has refused to submit to surgery to repair his ruptured anterior cruciate ligament because he fears that the surgery will not be successful, that he will be completely unable to do any work, that he will have pain in his knee during the recovery period and thereafter and that he might reinjure his knee during the recovery period.

"31.  The claimant's manic-depressive disorder distorts his judgment; specifically, it causes him to focus and dwell on the possible detrimental consequences of the proposed knee surgery to the exclusion of the probable benefits.  The claimant's disorder significantly impairs his ability to make a rational decision.

.  .  .

"34.  The claimant currently is 30 percent permanently impaired compared to the loss of the function of his lower right leg.  If the claimant submitted to knee surgery and it were successful, then he would be 10-15 percent permanently impaired compared to the loss of the function of his lower right leg."  (citations to record omitted)

After considering the various authorities and based upon the foregoing findings, the Workers' Compensation Court reached the following conclusion:

"The expert medical opinion, as found by this Court, is that the proposed knee surgery would enable the claimant to return to work as a welder. The proposed surgery is relatively low risk.  There exists an excellent prospect that the surgery would almost completely restore to the claimant the use of his right knee and that he would be pain free relatively soon after the operation.  The recovery period immediately after surgery would expose the claimant to significant pain.  If this Court had only this information before it, then it would have to conclude that the claimant's refusal to submit to knee surgery was unreasonable.  But this Court also has before it the claimant's impaired ability to evaluate the probable benefits of the surgery. While the factors the Dosen court relied on frame a bright picture of recovery when woodenly applied to the facts of this case, the claimant, because of his manic-depressive disorder, views these same facts through a glass darkly, and his view, a subjective view, is the one this Court too must take.  The claimant's mental disorder distorts his powers of perception, comprehension and judgment and conscripts his mind with the possibility of failure, reinjury and pain; his mental disorder prevents him from evaluating rationally the

5

benefits of the proposed surgery. From this perspective, the claimant's refusal to submit to knee surgery is not unreasonable."

The Workers' Compensation Court then concluded that the claimant's refusal to submit to knee surgery was not unreasonable and had not broken the chain of causation between his work-related injury and his current disabling knee condition.

The standard of review to be applied by this Court in its review of the conclusion that the claimant reasonably refused to submit to knee surgery is stated in 1 Larson, The Law of Workmen's Compensation §13-22 (1982):

> ". . . most courts will not at present disturb a finding that refusal to submit to the operation is reasonable, since the question is a complex fact judgment involving a multitude of variables, including claimant's age and physical condition, his previous surgical experience, the ratio of deaths from the operation, the percentage of cures, and many others. <u>The matter cannot be determined automatically as a matter of medical statistics and expert testimony</u>. The surgeon who sees several operations every day and who testifies that the chance of fatality is only five percent naturally has a different point of view than the claimant who has never had a major operation and might quite understandably prefer to enjoy life as best he can with his injury rather than take a one in twenty chance of being dead . . .." (emphasis added) (footnotes omitted)

Defendant argues that section 10.44 of the Montana Workers' Compensation Manual controls:

> "An injured worker is obligated to submit to reasonable medical treatment for an injury and if claimant declines to undergo such treatment, the insurer should be released from obligations to maintain the claimant."

This section of the manual cites as authority Dosen v. East Butte Copper Mining Co. (1927), 78 Mont. 579, 254 P. 880. In <u>Dosen</u> this Court stated:

> "Notwithstanding the fact that the osteomyelitis in his leg will continue, eventually causing the loss of his leg, and possibly his life, claimant always has stubbornly refused to submit to amputation, although little danger is to be apprehended from the operation . . .. The board could not order

6

claimant to submit to amputation of the leg, but it could absolve the company from making the payments during the period of claimant's obstinate and unreasonable refusal to submit to the operation advised by the surgeons in this case." 78 Mont. at 606, 254 P. at 888.

The Dosen opinion relied solely upon medical testimony establishing that the amputation procedure was reasonable and safe. No evidence of other appropriate factors was apparently taken or considered. The Court considered the amputation solely from a medical expert's point of view. It failed to consider the reasonableness of claimant's refusal in light of the "multitude of variables" appropriate to this complex factual determination and therefore failed to properly determine whether claimant's refusal was reasonable. Dosen displays a casual disregard of the substantial effects of surgical treatment which is no longer appropriate under the Workers' Compensation Law of Montana.

We therefore overrule Dosen. The Workers' Compensation Court is required to make the reasonableness determination based upon a multitude of variables, including the age and physical condition of the claimant, his previous surgical experience, ratio of deaths from the operation, the extent and percentage of cures, and other factors of a similar nature. This standard was not applied in Dosen. Here, the Workers' Compensation Court properly considered all evidence relevant to a determination of whether claimant's refusal to submit to surgery was reasonable, including evidence of claimant's manic-depressive disorder and its effect upon his ability to make a decision regarding surgery. The medical statistics regarding risk of the operation and likelihood of success alone are not sufficient to render claimant's refusal unreasonable.

7

As a result of the overruling of Dosen, section 10.44 of the Montana Workers' Compensation Manual no longer is authority for a denial of benefits under the facts of this case.

The applicable standard of review is stated in Nielsen v. Beaver Pond, Inc. (Mont. 1983), 661 P.2d 47, 49, 40 St.Rep. 489, 491:

> "'Our function in reviewing a decision of the Workers' Compensation Court is to determine whether there is substantial evidence to support the findings and conclusions of that court. We cannot substitute our judgment for that of the trial court as to the weight of evidence on questions of fact. Where there is substantial evidence to support the findings of the Workers' Compensation Court, this Court cannot overturn the decision. [citations omitted].'"

A review of the depositions of the various experts, including the medical experts, and of the transcript discloses substantial evidence to support both the findings and the conclusions of the Workers' Compensation Court. We therefore affirm the court's holding that claimant is entitled to permanent total disability even though he refused to have low-risk surgery. We hold there is substantial evidence to support both the findings and conclusions of the Workers' Compensation Court.

We point out that the conclusion of the Workers' Compensation Court with regard to aggravation of a pre-existing mental condition is in accord with Ridenour v. Equity Supply Co. (Mont. 1983), 665 P.2d 783, 788, 40 St.Rep. 1012, 1018:

> "It appears we are being asked to distinguish between a pre-existing condition and a pre-existing disease. However, there is no such distinction in the application of the aggravation and acceleration rule. An employer accepts his employee with all of his injuries and diseases. We have recognized that diseases are subject to aggravation or acceleration."

8

We approve the finding and conclusion by the Workers' Compensation Court that claimant's manic-depressive disorder predisposes him to manage money imprudently and that the claimant is not entitled to convert into a lump sum award any of the bi-weekly benefits. The court also concluded there was a possibility of vocational rehabilitation or other medical treatment and that a change in the claimant's mental disorder might create a need for additional proceedings. The court then pointed out that the parties may petition the court in the future for adjustment of the award based on a change of circumstances. This approach wisely protects the interest of both claimant and defendants.

The judgment is affirmed.

Justice

We concur:

Chief Justice

Justices

9