NO.   93-043

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

MICHELLE CHAPMAN,

     Claimant and Appellant,

  -vs-

RESEARCH COTTRELL,

     Employer,

  and

NATIONAL UNION FIRE LOSS OF PITTSBURGH,

     Defendant and Respondent.

FILED

JUL 13 1993

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   workers' Compensation Court
              The Honorable Timothy Reardon, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

          Don Edgar Burris, Attorney at Law, Billings,
          Montana

       For Respondent:

          William J. Mattix; Crowley, Haughey, Hanson, Toole
          & Dietrich, Billings, Montana


                   Submitted on Briefs:  May 27, 1993

                         Decided:  July 13, 1993

Filed:

_____
                   Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from an order of the Workers' Compensation Court, denying appellant's claims for medical payments, statutory penalties, costs,, and attorney's fees. We affirm.

Appellant Michelle Chapman (Chapman) was injured on May 16, 1989, while in the course and scope of her employment as a laborer for Research Cottrell at Colstrip, Montana. She fell twelve feet from a cooling tower and sustained injuries to her right arm and shoulder and to her neck and back. The insurer has paid temporary total disability benefits to Chapman since May 25, 1989. At the time this appeal was filed she was 24 years old and had not returned to work.

In June 1989, Dr. Richard Nelson, a neurologist, diagnosed Chapman's injuries as cervical and lumbosacral sprain. At first, the insurer refused to pay for Dr. Nelson's services, on the grounds that it had not authorized this treatment. Chapman filed a petition with the Workers' Compensation Court, which determined that the insurer was not liable for services rendered by Dr. Nelson. We reversed the Workers' Compensation Court because the evidence demonstrated that Dr. Nelson should be recognized as Chapman's treating physician, pursuant to A.R.M. 24.29.1403. Chapman v. Research Cottrell (1991), 248 Mont. 353, 811 P.2d 1283.

Dr. Nelson is still Chapman's treating physician. He has referred her to other specialists, including Drs. Thomas Johnson and Robert Snider, orthopedic surgeons. These doctors referred Chapman for physical therapy in January 1990. She was evaluated at

the Physical Therapy and Sports Medicine Center in Billings on January 10, 1990, and for the next eight months was treated at the Center with moist heat, ultrasound, and resistance exercises. Therapy was administered by Susan Zimmerman, an occupational therapist.

In August 1990, Chapman began an independent exercise program at the Billings YMCA. Zimmerman testified that Chapman had a prescription for this program, though she could not recall who had written it, and that she had designed the exercise program, which consisted of water exercises, free weights, and some Nautilus equipment. In September and October, 1990, Zimmerman testified, Chapman visited the Physical Therapy and Sports Medicine Center to use an "upper body ergometer" prescribed by Dr. Snider. Zimmerman had no records showing that Chapman had visited the Center or used the upper body ergometer between October 1990 and July 1991. The insurer paid all the costs of Chapman's therapy during this period, including the cost of her YMCA membership.

In July 1991, Chapman moved briefly to Florida, where her mother lived. Her lawyer notified the insurer's adjusting agent, Crawford and Company (Crawford) in June that Chapman was moving to Florida. He enclosed a prescription from Dr. Nelson for continuation of her swim therapy. In September 1991, Chapman's lawyer wrote again to Crawford, stating that Chapman had not been able to continue her therapy because "there has been no approval for use of gym facilities in Florida." Later that month, Crawford received a bill from a health club in Crystal River, Florida, for four months membership for Chapman. Crawford paid this bill in

3

November 1991, but by then Chapman had returned to Montana without using the health club.

Dr. Nelson saw Chapman on November 21, 1991, and reported in his notes that she had not been doing well, due to increasing stiffness of her neck and shoulder. He stated that she needed "about six months therapy with a program of exercise" and wrote a new prescription for water exercise, mentioning the YMCA specifically. The Billings YMCA, however, refused to give Chapman a membership without six months payment in advance. Chapman's lawyer forwarded the prescription to Crawford for authorization and payment, but without specifying the amount due. In December he sent Crawford the YMCA's bill for $290, covering six months membership. Crawford responded by stating that the insurer would pay for a physical therapy program only if it were supervised by a registered physical therapist.

Dr. Nelson examined Chapman again on January 31, 1992. His notes indicate that she "has not had any swimming or physical therapy programs . . . at the Y which we had previously asked for," and that she was still experiencing pain and a restricted range of motion with her right arm. He concluded that "the patient requires a formal and active program of intervention with swim therapy, walking, stretching, whirlpool and jacuzzi and a deep massage program."

On March 5, 1992, Chapman filed a petition for hearing in the Workers' Compensation Court, complaining that the insurer had unreasonably refused payment for her therapy at the health club in Florida and at the Billings YMCA after she returned from Florida.

4

A hearing was held on May 12, 1992, on the issues of what constitutes reasonable medical treatment in terms of physical therapy and whether the insurer was liable for the 20 percent penalty authorized by § 39-71-2907, MCA (1987), and for costs and attorney's fees. Occupational therapist Susan Zimmerman was the only witness who testified. The hearing examiner eventually decided all three issues in favor of the insurer.

In the meantime, Chapman returned to Zimmerman on March 13, 1992. Zimmerman provided eight treatments and then enrolled her in a swim therapy program at Rocky Mountain College, prescribed by Dr. Nelson on April 2, 1992. The insurer paid the costs of the treatment and the swim therapy program.

On July 2, 1992, the insurer advised Chapman that it would pay for a "structured, monitored physical therapy program" and that such a program was available through Health Partners, which is sponsored jointly by the Billings YMCA and the Deaconess Medical Center of Billings. Apparently in response to this letter, Chapman enrolled in Health Partners in July, but without notifying the insurer. In September, Health Partners notified the insurer that Chapman had completed two months of therapy and would no longer need the supervision of a physical therapist. The insurer paid the cost of the supervised therapy with Health Partners and authorized an extended conditioning program that would allow Chapman to work more independently but with periodic review by a physical therapist.

The Workers' Compensation Court adopted the hearing examiner's findings of fact and conclusions of law and entered judgment on

5

December 24, 1992. It determined that Chapman was not entitled to medical payments for the YMCA membership prescribed by Dr. Nelson in November 1991, and that she was not entitled to statutory penalties or to costs and attorney's fees. Chapman appealed.

The issues raised by Chapman on appeal are the same as those addressed by the Workers' Compensation Court in May 1992. We have restated them as follows:

1. Whether Chapman's proposed exercise at the health club in Florida and at the Billings YMCA constituted reasonable physical therapy, compensable as a reasonable and necessary medical expense under § 39-71-704, MCA (1987).

2. Whether the Workers' Compensation Court erred in denying Chapman a 20 percent penalty under § 39-71-2907, MCA (1987).

3. Whether the Workers' Compensation Court erred in denying Chapman costs and attorney's fees.

Two standards of review govern our decision in this case. First, we will not overturn factual findings of the Workers' Compensation Court if they are supported by substantial, credible evidence in the record. Field v. Sears, Roebuck & Co. (Mont. 1993), 847 P.2d 306, 310, 50 St.Rep. 166, 168. Second, we will uphold the court's conclusions of law if its interpretation of the law is correct. Plooster v. Pierce Packing Co. (Mont. 1993), 846 P.2d 976, 978, 50 St. Rep. 59, 60; Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.

I

Did Chapman's proposed exercise at the health club in Florida and at the Billings YMCA constitute reasonable physical therapy, compensable as a reasonable and necessary medical expense under § 39-71-704, MCA?

6

The Workers' Compensation Court concluded that as the insurer eventually paid for a health club membership in Florida, the only dispute between the parties was whether the "two month unsupervised YMCA membership" prescribed by Dr. Nelson was "reasonable physical therapy" for which the insurer should pay. The court also concluded that Chapman was not entitled to a medical payment for the "two months of unsupervised YMCA membership prescribed by her physician on November 21, 1991, which [Chapman] failed to use." These conclusions were based on the following findings of fact:

> 7. Claimant returned to Billings from Florida and on November 21, 1991, she was again examined by Dr. Nelson. . . . Dr. Nelson gave claimant a prescription for six months of exercise therapy at the Billings YMCA. . . .
>
> 8. Dr. Nelson examined claimant again on January 31, 1992. He noted that she had not carried out his request for an unsupervised exercise program at the YMCA, so he prescribed a formal and active physical therapy program. Claimant was not deposed and she failed to appear at trial which made it difficult to judge her credibility or to fully understand why she failed to appear at the YMCA for the exercise program prescribed by Dr. Nelson on November 21, 1991. After her January 31, 1992 visit, she did participate in the supervised program of occupational therapist Susan Zimmerman, which defendant accepted and paid.

The Workers' Compensation Court apparently misread the record in characterizing the case as a dispute between Chapman and the insurer over "two months of unsupervised YMCA membership." Chapman requested payment for a six-month YMCA membership in December 1991. This membership presumably would have provided therapy for her through June 1992, but the insurer refused to pay for that membership and did not pay for any therapy until March 1992, when Chapman resumed treatment under Zimmerman's supervision. Chapman therefore had no access to the prescribed water exercise or to any

7

therapeutic program from the **time** Dr. Nelson saw her in November 1991 until she went back to Zimmerman on March 13, 1992, a period of **almost** four months.

Moreover, it is not clear that Dr. Nelson intended the "program of exercise" he prescribed in November 1991 to be unsupervised, as the Workers' Compensation Court inferred. Zimmerman testified that to her, "program of exercise" meant treatment supervised by a therapist. She also testified that she would not recommend unsupervised exercise for a person in Chapman's condition who had had no therapeutic exercise for several months. Dr. Nelson did not testify. Thus, the question is not whether the insurer should have paid for therapy that Chapman never attempted, but whether unsupervised exercise at the YMCA was reasonable physical therapy, compensable as a reasonable and necessary medical expense under § 39-71-704, MCA.

We conclude that substantial, credible evidence supports the insurer's view that unsupervised exercise was not reasonable physical therapy for Chapman after she returned from Florida in November 1991. We hold, therefore, that the insurer did not act unreasonably in refusing to pay for it.

II

Did the Workers' Compensation Court err in denying Chapman a 20 percent penalty under § 39-71-2907, MCA?

Section **39-71-2907(1),** MCA (1987) (emphasis added) provides that:

> When payment of compensation has been unreasonably delayed **or** refused by an insurer . . . the full amount of the compensation benefits due a claimant between the time

8

> compensation benefitswere delayed or refused and the date of the order granting a claimant compensation benefits may be increased by the workers' compensation judge by 20%. <u>The question of unreasonable delay or refusal shall be determined by the workers' compensation judge</u> . . . .

The Workers' Compensation Court concluded that Chapman was not entitled to statutory penalties because the insurer acted reasonably throughout.

Chapman argues that she is entitled to the 20 percent penalty because the insurer's refusal to pay for unsupervised exercise in January 1992 was unreasonable in view of the fact that it had paid for unsupervised exercise at the YMCA in 1991. She contends that the insurer's four-month delay in paying for her health club membership in Florida during the summer of 1991 also was unreasonable, for the same reason.

Unreasonable delay or refusal is a question of fact to be determined by the Workers' Compensation Court: we will not reverse its decision on awarding a penalty if the decision is supported by substantial, credible evidence. <u>Field</u>, 847 P.2d at 310; Jaenish v. Super a Motel (1991), 248 Mont. 383, 389-90, 812 P.2d 1241, 1245. Here, the court determined, based on the record, that the insurer paid for Chapman's health club membership in Florida within a reasonable time after it received the club's bill; it found, therefore, that the delay was not unreasonable. This decision is supported by substantial evidence.

Having concluded under the first issue that the insurer's refusal to pay for Chapman's YMCA membership in January 1992 also was not unreasonable, we hold that the Workers' Compensation Court

did not err in denying penalties under § 39-71-2907, MCA (1987).

                                III

Did the Workers' Compensation Court err in denying Chapman costs and attorney's fees?

Section 39-71-611, MCA **(1987),** requires an insurer to pay a claimant's reasonable costs and attorney's fees if the insurer unreasonably denies liability for a claim later adjudged compensable by the Workers' Compensation Court. As the claims for which the insurer denied liability in this case were not later adjudged compensable by the Workers' Compensation Court, this statute does not apply. The Workers' Compensation Court did not err in denying Chapman costs and attorney's fees.

AFFIRMED.

_____
                            Justice

We concur:

_____
        Chief Justice

_____

_____

_____
        Justices

10

July 13, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Don Edgar Burris
Attorney at Law
P.O. Box 2344
Billings, MT 59103

William J. Mattix
Attorney at Law
P.O. Box 2529
Billings, MT 59103-2529

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy