No. 93-497

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

ARLIS REEVERTS,

 Claimant and Appellant,

v.

SEARS, ROEBUCK & COMPANY,

 Employer, Respondent,
 and Cross-Appellant.



FILED

SEP 16 1994

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: Workers' Compensation Court, The Honorable
      Timothy W. Reardon, Judge presiding.


COUNSEL OF RECORD:

  For Appellant:

    Tom L. Lewis and Andrew D. Huppert,
    Great Falls, Montana

  For Respondent:

    Michael C. Prezeau, Garlington,
    Lohn & Robinson, Missoula, Montana


        Submitted on Briefs: May 12, 1994

             Decided: September 16, 1994

Filed:

          Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Claimant Arlis Reeverts sustained a work-related injury to her back on March 16, 1984, which resulted in substantial permanent physical impairment. Reeverts' employer, Sears, Roebuck & Company, paid her an indemnity benefit based on her impairment rating, but no other partial disability benefits for this work-related injury were paid. On April 6, 1989, while working for the same employer, she suffered a subsequent industrial injury which caused her total disability. The Workers' Compensation Court awarded Reeverts 500 weeks of permanent partial disability benefits pursuant to § 39-71-703, MCA (1983), for the injury sustained in 1984, but suspended payment of these benefits until her entitlement to total disability benefits for the subsequent injury terminated. The court also awarded Reeverts attorney fees and costs, but denied her request for a 20 percent penalty pursuant to § 39-71-2907, MCA (1983).

We affirm in part and reverse in part.

The following issues are before this Court:

1. Did the Workers' Compensation Court err when it concluded that Reeverts is entitled to 500 weeks of permanent partial disability benefits pursuant to § 39-71-703, MCA (1983), for her 1984 injury?

2. Did the Workers' Compensation Court err when it concluded that Reeverts' permanent partial disability benefits should not be paid concurrently with her permanent total disability benefits pursuant to § 39-71-737, MCA (1983)?

2

3. Did the Workers' Compensation Court err when it refused to award a 20 percent penalty pursuant to § 39-71-2907, MCA (1983)?

Arlis Reeverts began working for Sears, Roebuck & Company in 1965. At the time of her injury in 1984, Reeverts was 53 years old and was earning $6.31 per hour working in Sears' Great Falls store in the drapery department.

On March 16, 1984, Reeverts severely injured her back while loading freight onto a freight car. Her injury resulted in spinal surgery with a lumbar-sacral fusion and required a lengthy period of recovery. Based on her physician's permanent physical impairment rating of 15 percent, Sears paid Reeverts an impairment award. No other partial disability benefits were paid.

On July 31, 1985, Reeverts was released by her physician to return to work with the restriction that she avoid heavy lifting. As a result, she could no longer perform her previous job duties and Sears placed her in its mail order department where she was responsible for taking catalog orders over the telephone. However, in April 1989, the new job Reeverts had been given with modified duties was eliminated, and she was transferred back to her former job in the drapery department. On the first day that she resumed her former duties, she re-injured her back and was subsequently declared permanently totally disabled. At the time of this injury on April 6, 1989, Reeverts was approximately 58 years old and was earning $7.83 per hour.

Although Sears accepted liability for payment of total disability benefits as a result of the 1989 injury, Reeverts and

3

Sears were unable to agree on her entitlement to partial disability benefits for the 1984 injury. Reeverts, therefore, filed a petition with the Workers' Compensation Court in an effort to recover those benefits.

A trial was held on December 2, 1992, before Hearing Examiner Robert J. Campbell. The evidence consisted of Reeverts' medical records, and testimony by Reeverts, Sears' claims adjuster, and two vocational consultants. In an order issued on June 7, 1993, the Workers' Compensation Court adopted the hearing examiner's proposed findings of fact, conclusions of law, and judgment. The court concluded that Reeverts had suffered a permanent impairment to her earning capacity as a result of the 1984 injury and was entitled, pursuant to § 39-71-703, MCA (1983), to permanent partial disability benefits. However, the court concluded that her entitlement to these disability benefits terminated when she was subsequently injured on April 6, 1989. Based on this conclusion, Reeverts was awarded 117 weeks of partial disability benefits at the rate of $88.84 per week. The court further awarded Reeverts reasonable costs and attorney fees, but did not rule on her request for a 20 percent penalty pursuant to § 39-71-2907, MCA (1983).

In an amended judgment issued on August 31, 1993, the court reversed its prior determination that Reeverts' entitlement to permanent partial disability benefits terminated due to her subsequent injury, and concluded that Reeverts was entitled to 500 weeks of disability benefits as a result of her 1984 injury. However, the court ordered that the benefits which had accrued

4

prior to her second injury were payable in a lump sum and "[t]he remaining permanent partial disability benefits are payable bi-weekly after claimant reaches 65 years of age, if her disability results from her March 16, 1984 injury." As a basis for its determination that payment of partial disability benefits for the 1984 injury should be suspended until Reeverts reached the age of 65 and total disability benefits for the 1989 injury were terminated, the court relied on § 39-71-737, MCA (1983), which states "[c]ompensation shall run consecutively and not concurrently, and payment shall not be made for two classes of disability over the same period."

Finally, the court ordered that Reeverts was not entitled to a 20 percent increase in her award as a penalty.

Reeverts appeals the court's conclusion that payment of partial disability benefits for the 1984 injury is suspended until the time that her total disability benefits for the 1989 injury terminate. She also appeals the court's refusal to award a 20 percent penalty pursuant to § 39-71-2907, MCA (1983). Sears cross-appeals the court's conclusion that Reeverts is entitled to permanent partial disability benefits for the injury sustained in 1984.

STANDARD OF REVIEW

The standards employed by this Court when reviewing a Workers' Compensation Court decision are well established. This Court will not substitute its judgment for that of the Workers' Compensation Court and will uphold its findings if there is substantial evidence

5

in the record to support them. *Houts v. Kare-Mor, Inc.* (1993), 257 Mont. 65, 68, 847 P.2d 701, 703; *Kraft v. Flathead Valley Labor and Contractors* (1990), 243 Mont. 363, 365, 792 P.2d 1094, 1095. We will uphold the court's conclusions of law if its interpretation of the law is correct. *Chapman v. Research Cottrell* (1993), 259 Mont. 329, 333, 856 P.2d 234, 237. Finally, the law in effect at the time of the injury establishes the benefits to which a claimant is entitled. *Buckman v. Montana Deaconess Hospital* (1986), 224 Mont. 318, 321, 730 P.2d 380, 382; *Chagnon v. Travelers Insurance Company* (1993), 259 Mont. 21, 25, 855 P.2d 1002, 1004.

## ISSUE 1

Did the Workers' Compensation Court err when it concluded that Reeverts is entitled to 500 weeks of permanent partial disability benefits pursuant to § 39-71-703, MCA (1983) for her 1984 injury?

Sears contends that the court erred when it concluded that Reeverts was entitled to 500 weeks of permanent partial disability benefits because the injury she suffered in 1984 did not result in an actual diminution of her earning capacity. It is Sears' contention that, under the pertinent statute in effect at the time of Reeverts' first injury, there is no entitlement to benefits unless the claimant can prove that an actual diminution in earning capacity results from a disabling injury. Sears bases its argument solely on the fact that with normal annual salary increases, Reeverts earned more after returning to work for Sears than at the time of her injury. Because there was no actual decrease in

6

Reeverts' actual earnings, Sears contends that she was not entitled to benefits under § 39-71-703, MCA (1983).

At the time of Reeverts' injury, § 39-71-703, MCA (1983), read in pertinent part:

> (1) Weekly compensation benefits for injury producing partial disability shall be 66 2/3% of the actual diminution in the worker's earning capacity measured in dollars, subject to a maximum weekly compensation of one-half the state's average weekly wage.

We have considered this provision on several occasions and have made clear that "earning capacity," for workers' compensation purposes, is not determined by merely comparing pre-injury wages with post-injury wages. *Sedlack v. Bigfork Convalescent Center* (1988), 230 Mont. 273, 277, 749 P.2d 1085, 1087. Rather, a determination of an injured worker's earning capacity includes the consideration of such factors of age, occupation, skills and education, previous health, number of productive years remaining, and degree of physical or mental impairment. *Sedlack,* 749 P.2d at 1087-88; *Hurley v. Dupuis* (1988), 233 Mont. 242, 246-47, 759 P.2d 996, 999. The correct test for loss of earning capacity, cited time and again by this Court, is whether the industrial accident has caused "a loss of ability to earn in the open labor market." *Shaffer v. Midland Empire Packing Co.* (1953), 127 Mont. 211, 213-14, 259 P.2d 340, 342; *Fermo v. Superline Products* (1978), 175 Mont. 345, 348, 574 P.2d 251, 253; *Hafer v. Anaconda Aluminum Co.* (1982), 198 Mont. 105, 109-10, 643 P.2d 1192, 1195, *aff'd on remand* (1984), 211 Mont. 384, 684 P.2d 1114.

7

For Sears to argue that a claimant must demonstrate an actual wage loss to be entitled to partial disability benefits pursuant to § -703 is a notion that has been soundly and repeatedly rejected by this Court. We find Sears' attempt to argue otherwise without merit.

In this instance, the record demonstrates that the hearing examiner and the Workers' Compensation Court considered the appropriate factors for a determination of whether Reeverts suffered a permanent loss of earning capacity due to her 1984 injury. Although there was conflicting vocational evidence regarding Reeverts' ability to be competitive in an open labor market, it is clear that Reeverts' vocational expert's testimony demonstrating her loss of earning capacity was more persuasive to the trier of fact and its conclusion is clearly supported in the record.

Furthermore, Reeverts' situation speaks for itself. At the time that her healing period ended in 1985, she was a 55-year-old woman with a high school education but no specialized training. Her only job experience was her history of employment at Sears where her duties consisted of handling freight weighing up to 75 pounds, and other strenuous activities which she could no longer perform. It does not take a vocational consultant to realize that in her condition at her age, her opportunities for employment in the open labor market were substantially reduced, if not totally eliminated.

We conclude that there is neither a basis to alter the court's findings regarding Reeverts' earning capacity, nor its conclusion that she is entitled to 500 weeks of permanent partial disability benefits pursuant to § 39-71-703, MCA (1983), for the injury sustained in 1984. We affirm the judgment of the Workers' Compensation Court in this respect.

### ISSUE 2

Did the Workers' Compensation Court err when it concluded that Reeverts' permanent partial disability benefits should not be paid concurrently with her permanent total disability benefits pursuant to § 39-71-737, MCA (1983)?

Although the Workers' Compensation Court correctly determined that Reeverts was permanently partially disabled from her original injury and entitled to 500 weeks of permanent partial disability benefits, it then held that her entitlement to those benefits was terminated by her second injury. Therefore, the court held that her receipt of partial disability benefits should be suspended until she reaches the age of 65, at which time her entitlement to total disability benefits ends.

As a basis for this decision, the court relied on § 39-71-737, MCA (1983), which prohibits the payment of different classes of benefits at the same time. Reeverts contends that the court's reliance on this section was misplaced because this provision prohibits the payment of two classes of benefits resulting from the same industrial injury rather than prohibiting concurrent payment of benefits for different injuries. Here, Reeverts sustained a

9

second, separate injury, which left her totally disabled, and she maintains that this later injury does not negate her entitlement to permanent partial disability benefits for the original injury which left her permanently partially disabled. Reeverts asserts that the court's decision regarding suspension of her benefits is contrary to previous decisions of the Workers' Compensation Court on the same subject, and this Court's decisions in *Tiedeman v. State Fund* (1985), 218 Mont. 312, 708 P.2d 255, and *Peitz v. Industrial Accident Board* (1953), 127 Mont. 316, 264 P.2d 709, where we held that a prior settlement did not preclude the claimant from recovering subsequent benefits for a second injury to the same part of his body.

Sears takes no position on this issue based on its argument that Reeverts sustained no disability from the first injury, and therefore, it considers this issue moot.

For the following reasons, we conclude that the Workers' Compensation Court misapplied § 39-71-737, MCA (1983), in this instance and hold that this section of the statute does not prohibit concurrent payment of benefits for different injuries.

Section 39-71-737, MCA (1983), states that "[c]ompensation shall run consecutively and not concurrently, and payment shall not be made for two classes of disability over the same period."

The statute does not specify whether it relates only to classes of benefits for the same injury or to benefits for separate injuries. Therefore, in order to ascertain the intentions of the legislature, we must look to its history.

10

This section of the workers' compensation law was originally adopted in 1915. 1915 Montana Laws, Chapter 96, § 16(h). It was later amended in 1921, 1925, 1945, 1947, 1955, 1973, 1974, 1985, and 1987. However, other than 1985, there are no relevant legislative minutes which shed light on the question raised in this appeal.

In 1985, certain exceptions to the prohibition on concurrent payments were added to the statute. This amendment was offered in response to this Court's decision in *Grimshaw v. L. Peter Larson Company* (1984), 213 Mont. 291, 691 P.2d 805, and was enacted to permit indemnity benefits based on physical impairment to be paid during the period of time that a claimant is receiving temporary total disability benefits. However, all of the discussion in the 1985 legislative history relates to situations where a claimant is entitled to different classes of benefits resulting from the same injury, and not to a situation similar to the one presented in this case.

In 1987, the statute was again amended. This time the purpose of the amendment was to allow for an impairment award and auxiliary rehabilitation benefits to be paid concurrently with other benefits. It also allowed for wage supplement benefits and partial rehabilitation benefits to be paid concurrently. These amendments clearly relate to permitting different types of benefits, which accrue from the same injury, to be paid concurrently where their purposes can be complimentary of each other. Section 39-71-737, MCA (1987).

11

Perhaps the best indication of the purpose of this statute can be ascertained from the original form in which it was enacted. The 1915 statute was very specific about the order in which benefits were to be paid. It provided:

> (h) Compensation for all classes of injuries shall run consecutively and not concurrently, and as follows: First, the two weeks medical and hospital services and medicines as provided in section 16(f), unless the employee is a contributor to a hospital fund, as otherwise in this act provided; after the first two weeks, compensation as provided in section 16(a), or 16(b), or 16(c); following, either or none of the above, compensation as provided in 16(i); following any or either, or none of the above, if death results from the accident within six months of the date of the injury, burial expenses as provided in section 16(e); following which compensation to beneficiaries, if any; following which, if no beneficiaries, compensation to major dependents; following which, if no beneficiaries and no major dependents, compensation to minor dependents, if any.

1915 Montana Laws, Chapter 96, § 16(h).

It its original form, this statute laid out a progression for payment of benefits which could only refer to different types of benefits from the same injury. The statute refers to "the accident" and "the injury" and sets forth a sequence which can only logically apply to a single injury, rather than separate and distinct injuries.

This Court has interpreted § -737 of the Workers' Compensation Act in only two instances: *Grimshaw*, 691 P.2d at 805, and *Dosen v. East Butte Copper Mining Company* (1927), 78 Mont. 579, 254 P. 880 (*overruled on other grounds by Small v. Transportation Ins. Co.* (1984), 209 Mont. 387, 681 P.2d 1081). In *Dosen*, this Court observed that the statute, as it existed in 1927, contemplated the possibility of four resulting

12

conditions from an injury: (1) temporary total disability; (2) permanent total disability; (3) temporary partial disability; and (4) permanent partial disability. The Court held that the term "classes" mentioned in this predecessor to § -737 referred to the different types of disability benefits which could potentially be received for a single injury. We held that they had to be paid successively in the order provided for in the statute, and that payment for two different classes could not be made over the same period of time. Neither this case, nor the statute in its original form, made mention of different classes of benefits to which a claimant might be entitled as a result of two separate injuries.

We set forth in *Dosen* the following illustration of how § -737 applies:

> If a man who has a broken leg is confined to his bed for a period of two months, during that time he is temporarily totally disabled. If the leg is so badly injured that a good recovery never ensues, or if complications from the injury set in so that he never makes a good recovery, he then has a permanent partial disability. The period of total disability has ceased and a period of partial disability has succeeded. Here are two classes of disabilities, one succeeding the other.

*Dosen*, 254 P. at 887.

Likewise, in *Grimshaw*, this Court discussed § -737 in the context of two different types of disability benefits to which a claimant might be entitled as a result of the same injury. We held in *Grimshaw*, 691 P.2d at 809, that permanent total disability benefits could not be paid concurrently with permanent partial disability benefits which resulted from the same injury. Thus, we

13

find no support in either the legislative history nor in this Court's previous decisions for the proposition that the prohibition against concurrent payment of different classes of benefits applies to benefits resulting from separate injuries.

We conclude that such an application of § -737 was never the Legislature's intention when it enacted this provision in its original form. Nor is there any evidence to suggest that this was the Legislature's intention when the subsequent amendments to this section were adopted. Finally, none of our prior decisions which discuss § -737 support the type of construction implicit in the Workers' Compensation Court's decision.

We hold that when Reeverts went back to work and re-injured herself, she did not lose the right to receive the partial disability benefits to which she was entitled as a result of her prior injury. Therefore, the court erred when it concluded that Reeverts could not receive her permanent partial disability benefits, which were due as a result of her 1984 injury, concurrently with her permanent total disability benefits, which were due because of her 1989 injury.

### ISSUE 3

Did the Workers' Compensation Court err when it refused to award a 20 percent penalty pursuant to § 39-71-2907, MCA (1983)?

Reeverts contends the court erred by failing to award a 20 percent increase in her disability award because the adjuster for Sears knew that Reeverts was entitled to continued partial disability benefits when she returned to work after her first

14

injury but, without an adequate investigation, refused to pay those benefits. Sears, however, counters by claiming there was a legitimate dispute between the parties regarding the extent of partial disability benefits to which Reeverts was entitled. Therefore, it contends there is no basis for the imposition of a penalty based on an employer's unreasonable delay or refusal to pay benefits.

Section 39-71-2907, MCA (1983), provides in pertinent part:

When payment of compensation has been unreasonably delayed or refused by an insurer . . . the full amount of the compensation benefits due a claimant . . . may be increased by the workers' compensation judge by 20%. The question of unreasonable delay or refusal shall be determined by the workers' compensation judge . . . .

We have stated that the Workers' Compensation Court's decision regarding the imposition of a penalty is a question of fact and will not be reversed if the decision is supported by substantial credible evidence. *Chapman*, 856 P.2d at 238.

In its amended order, the Workers' Compensation Court found "that a legitimate dispute occurred between the parties and the evidence does not support a finding that defendant [Sears] unreasonably delayed or denied claimant's benefits." Based on our previous decisions regarding permanent partial disability benefits, and the position Sears has taken in this case in disregard of those decisions, this issue is a difficult one. However, since Sears did offer evidence in support of its position, and out of deference to the trial court's better position to consider the spirit in which that evidence was offered, we affirm the court's denial of the penalty with the following caveat: This is not an issue that

15

should have to be repeatedly decided by this Court while needed disability benefits are denied and delayed.

The judgment of the Workers' Compensation Court is affirmed with respect to its conclusions that Reeverts is entitled to 500 weeks of permanent partial disability benefits due to her 1984 injury, and that there is no basis to impose the statutory penalty. However, we reverse the court's determination that the payment of these benefits should be suspended until her entitlement to total disability benefits for the 1989 injury terminates. This case is remanded for entry of judgment consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

16